UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SHAWN JOSEPH, | § |
| | § |
| *Plaintiff,* | § |
| | § |
| v. | § **CIVIL ACTION NO. 1:22-cv-615** |
| | § |
| GENESIS COIN, INC.; GENESIS | § |
| SERVICES INC.; AQUARIUS | § |
| MANAGEMENT CORP.; AND EVAN | § |
| ROSE. | § |
| | § |
| *Defendants.* | § |
| | § |

## NOTICE OF REMOVAL

Defendants Genesis Coin, Inc., Genesis Services, Inc., Aquarius Management Corporation, and Evan Rose (collectively, the "Genesis Group"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby remove this action, which has been pending in the District Court of Travis County, Texas, under Cause No. D-1-GN-22-002321, to the United States District Court for the Western District of Texas.   As grounds for removal, the Genesis Group states the following:

### I.        STATE COURT ACTION

1.        On May 19, 2022, Plaintiff Shawn Joseph ("Plaintiff") filed an Original Petition ("Petition") alleging various purported causes of action against Defendants arising from his prior employment with the Genesis Group styled as: (1) "retaliation" (2) "breach of contract"; (3) "breach of the implied covenant of good faith & fair dealing"; (4) "fraudulent inducement;" (5) "string-along fraud"; and (6) "unjust enrichment." A copy of the Petition is attached as **Exhibit 1**.

## II.     BASIS FOR REMOVAL

### A.     Amount in Controversy

2.     The basis for jurisdiction in this Court is 28 U.S.C. § 1332, which provides that the United States District Courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

3.     The amount in controversy "requirement is met if . . . it is apparent from the face of the petition that the claims are likely to exceed $75,000." *Manguno v. Prudential Prop. and Cas. Ins. Co*., 276 F.3d 720, 723 (5th Cir. 2002).  As alleged by Plaintiff, the amount in dispute in this action is well in excess of the statutory threshold.

4.     Plaintiff alleges that under a Restricted Stock Grant Agreement[1] between Plaintiff and the Genesis Group, he "was granted 1,000 shares in the stock of Genesis, valued at the time by the Board of Directors at $200 per share" for a total value of at least $200,000.  Petition at ¶ 30.  Plaintiff further alleges that Defendant Evan Rose "attempt[ed] to bully" him by, *inter alia*, "threatening to withhold the rest of [Plaintiff's] contractual salary and to redeem [his] shares for only $25 per share"—for a total value of $25,000—as provided under the terms Restricted Stock Grant Agreement.  *Id*. at ¶ 41 & attached Exhibit C.  Thus, as alleged by Plaintiff, the amount in dispute must be at least $175,000—the delta between the minimum share value Plaintiff claims he is entitled to and the value Genesis Group was entitled to redeem vested shares for under the Restricted Stock Grant Agreement.

5.     But the actual amount in dispute is even higher.  Plaintiff did not receive *any* of the $200,000 in stock redemptions to which he claims he is entitled because he was terminated for cause prior to the vesting date.   Moreover, Plaintiff alleges he was entitled to a much higher

---

[1] A copy of the Restricted Stock Grant Agreement is attached as Exhibit 3 to the Original Petition (**Exhibit 1**).

amount based on an alleged appreciation in the value of the shares "reflect[ing] the value of . . . the intellectual property that [Plaintiff] believed he had contributed to Genesis." *Id*. at ¶ 39.  The Petition includes a claim for "[l]ost value of shares" relating to these alleged damages.  *Id*. at Prayer for Relief.

6.     Plaintiff also seeks "temporary and/or preliminary injunctive relief" and "equitable re-assignment of patents and/or other intellectual property rights" of the Genesis Group.  *Id*.  In cases seeking equitable relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Garcia v. Koch Oil Co. of Tex. Inc*., 351 F.3d 636, 640 (5th Cir. 2003) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) (internal quotation marks omitted)).  The object of Plaintiff's claims for equitable relief relate to the Genesis Group's intellectual property—the core of a business that Plaintiff himself alleges had sales revenue of over $70 million in 2021.  Petition at ¶ 39.  Based on the face of the Petition, it is reasonable to conclude the value of such intellectual property far exceeds $75,000.

7.     In addition to seeking injunctive and equitable relief, Plaintiff seeks "exemplary damages" and "attorneys' fees and costs of suit" (Exhibit A, Petition, Prayer for Relief) which may also be considered by a Court in assessing whether a Petition meets the "amount in controversy" requirement.  *See, e.g., Lewis v. State Farm Lloyds*, 205 F. Supp. 2d 706, 708 (S.D. Tex. 2002) (finding that unliquidated damages were substantial when they included, among other things, damages under the Deceptive Trade Practice Act, the Texas Insurance Code, exemplary damages, and attorneys' fees); *Maley v. Design Benefits Plan, Inc*., 125 F. Supp. 2d 197, 199 (E.D. Tex. 2000) (finding that the array of damages sought for alleged injuries in a breach of contract case, including actual damages, exemplary damages, and attorneys' fees, could support a

finding of the requisite amount in controversy); *Premier Indus. Corp. v. Texas Indus. Fastener Co.*, 450 F.2d 444, 447 (5th Cir. 1971) (concluding that, when determining the amount in controversy in an action to enforce a contract, the attorneys' fees provided for by the agreement should be included).

8.      For all the reasons above, the face of the Petition establishes that the amount in controversy in this action far exceeds $75,000.

### B.      Diversity of Citizenship

9.      This is also an action between citizens of different states as Plaintiff implicitly acknowledged when entering into the Employment Agreement.

10.      For individuals, "citizenship has the same meaning as domicile," and "the place of residence is prima facie the domicile." *Foot Locker Retail, Inc. v. Cardenas*, No. SA-21-CV-00564-XR, 2021 U.S. Dist. LEXIS 210732, at *6 (W.D. Tex. Nov. 1, 2021) (quoting *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954)).

11.      Plaintiff alleges he is a resident of Texas.   *See* Petition at ¶ 3.   All of the Defendants are citizens of other states.

12.      "Defendant Evan Rose is an individual residing in San Juan, Puerto Rico" who "founded both Genesis [Coin, Inc.] and Aquarius and acts as the CEO of Genesis [Coin, Inc.] and President & CEO of Aquarius."   Petition at ¶ 7.   Plaintiff similarly alleges that "Rose also founded and manages Genesis Services."   *Id.*   Mr. Rose has been a resident in Puerto Rico since February 2017, where he directs, controls, and coordinates all of the Genesis Group's business activities.   *See* **Exhibit 2**, Declaration of Evan Rose ("Rose Decl.") at ¶¶ 1, 7-8.

13.      For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or

foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The U.S. Supreme Court has held that a corporation's "principal place of business" refers "to the place where a corporation's officers direct, control, and coordinate the corporation's activities" or what is often referred to as its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

14.      "This is generally the location of the corporation's headquarters, as long as the headquarters is the actual center of control and not merely the office where the corporation holds its board meetings." *Tran v. Tran*, No. A-17-CV-510 LY, 2017 U.S. Dist. LEXIS 218697, at *5-6 (W.D. Tex. Aug. 25, 2017) (citing *Hertz Corp*, 599 U.S. at 93). "There are a number of factors courts consider, including the: (1) location of corporate and executive offices; (2) site where day-to-day control is exercised;  (3) the amount of managerial authority at the executive office; (4) location of corporate records and bank accounts; (5) location where the board of directors and stockholders meet; (6) location where executives live, have offices, and spend their time; (7) location where corporate income tax is filed; (8) location designated in corporate charter; and (9) location where policy, advertising, distribution, accounts receivable departments, and finance decisions originate." *Id*. (citing *Guitar Holding Co., LP v. El Paso Natural Gas Co*., 2010 U.S. Dist. LEXIS 85817, 2010 WL 33388550, at *3 (W.D. Tex. Aug. 18, 2010)).

15.      Applying this test and the relevant factors, the principal place of business or "nerve center" of all three defendant entities in the Genesis Group is San Juan, Puerto Rico, where the founder and CEO resides and directs, controls, and coordinates their activities.

16.      As Plaintiff alleges, Defendant Aquarius Management Corporation "is a Puerto Rican technology consulting firm that, on information and belief, *manages and/or executes Genesis's transactions* and shares/uses the intellectual property created for Genesis, with its

headquarters located at 802 Fernández Juncos Avenue, San Juan, Puerto Rico 00907." Petition at ¶ 6 (emphasis added); *accord* **Exhibit 2**, Declaration of Evan Rose ("Rose Decl.") at ¶ 3.

17. The parties also agree that Defendants Genesis Coin, Inc. and Genesis Services, Inc. are incorporated in Delaware. Petition at ¶¶ 4-5; Rose Decl. at ¶¶ 4-5. But despite the allegations in the Petition that Defendant Evan Rose utilized both companies as his "alter ego" from Puerto Rico, Plaintiff nevertheless claims that both entities are "headquartered" in Texas with a "principal office" at "5900 Balcones Drive, Suite 100, Austin, Texas 78731" ("5900 Balcones Drive Address"). *Id*. However, neither company is based in Texas. Rose Decl. at ¶¶ 4-5. Although Genesis Coin, Inc. employed Mr. Joseph while he was living in Texas and was registered to do business in the state, Genesis Services, Inc. did not employ Mr. Joseph, has no apparent nexus with Texas whatsoever and was not registered in the state. *Id*. at ¶ 10.

18. According to Plaintiff, Defendant Evan Rose "open[ed]" the office at this address sometime after 2015 or 2016. Petition, ¶ 19. However, the 5900 Balcones Drive Address is not an office for any company in the Genesis Group. It is the address of Texan Registered Agents, Inc, the Genesis Group's registered agent in Texas. *See* Rose Decl. at ¶ 10. Plaintiff is likely aware of that fact since the name "Registered Agents Inc." appears alongside the 5900 Balcones Drive Address on the summons issued in this matter. *See* **Exhibit 3**: Copy of Summons and Return of Service.

19. Indeed, there has never been an office of Genesis Coin. Inc., Genesis Services, Inc., or any other related company at the 5900 Balcones Drive address. *See* Rose Decl. at ¶ 12.

20. Contrary to Plaintiff's allegations, neither Genesis Coin, Inc. nor Genesis Services, Inc. are "headquartered" in Texas nor do they maintain their "principal place of business" in the state. Indeed, in entering into the Agreement with Genesis Coin, Inc., Plaintiff

implicitly acknowledged the diversity between the parties.  For example, Section 15 of the Agreement, attached as Exhibit B to the Petition, provides that Plaintiff "agrees that any action or proceeding to enforce, or that arises out of, this Agreement may be commenced and maintained *in the district courts of the United States*." Petition, Exhibit B (emphasis added).

21.    Genesis Group sells virtual currency kiosks or ATMs and licenses the proprietary software to operate them.  Within the Genesis Group of companies, Genesis Coin, Inc. and Genesis Services, Inc. effectively operate as the customer-facing "brand" that enters into agreements with customers for the sale of virtual currency kiosks and licenses the proprietary software to operate the kiosks which is owned by Aquarius Management Corporation. *See* Rose Decl. at ¶ 6.

22.    Mr. Rose directs, controls, and coordinates all of the business activities of Genesis Coin, Inc., Genesis Services, Inc. and Aquarius Management Corporation from Puerto Rico.  *See* Rose Decl. at ¶¶ 7-8.  The Genesis Group's office and principal place of business is located in San Juan, Puerto Rico.  *Id*. at ¶ 8.

23.    In or around November 2019, Defendant Evan Rose hired Plaintiff to serve as the Chief Intellectual Property Officer ("CIPO") of Genesis Coin, Inc.  *Id*. at ¶ 9.  Plaintiff was the only employee of the Genesis Coin, Inc. during the time that he served as the CIPO until his termination in March 2022.  *Id*.

24.    Plaintiff was hired to assist the Genesis Group in the analysis, development, and implementation of the Company's intellectual property strategy.  *Id*. at ¶ 11. While he was employed by Genesis Coin, Inc., all of Plaintiff's official activities were directed and supervised by Defendant Evan Rose from Puerto Rico. *Id*.  Plaintiff' job responsibilities did not include any revenue generating or customer-facing activities.  *Id*.

25.     Just as Plaintiff alleges in his Petition that he had worked remotely for the U.S. Patent and Trademark Office (Petition at ¶ 20), Plaintiff carried out his duties for the Genesis Group from Texas, because that is where he lived at the time and his anticipated responsibilities did not require him to be in Puerto Rico. *See* Rose Decl. at ¶ 11.  There was no business need for Mr. Joseph to work from Texas—he was free to work from anywhere during his employment. *Id*.  In fact, for portions of his employment, he worked from his second home in Washington, D.C.  *Id*.  Plaintiff also traveled to meet with Mr. Rose in San Juan, Puerto Rico to discuss business strategies for the company. *Id*.   All of the expenses associated with Plaintiff's employment with the Genesis Group were ultimately reimbursed by Aquarius Management Corporation in Puerto Rico.  *Id*.

26.     The Genesis Group entity employing Plaintiff was Genesis Coin, Inc. *Id*. at ¶ 9. Plaintiff was not employed by Genesis Services, Inc., which was not registered in nor did business in Texas. *Id*. at ¶ 10.

27.     Because it had an employee in Texas, Genesis Coin, Inc. maintained corporate registrations and paid state income taxes.  *See id*.  It also maintained an agent for service of process, Registered Agents, Inc., with an address at 5900 Balcones Drive, Suite 100, Austin, Texas 78731.  But those facts do not outweigh all of the other factors demonstrating that the company was managed and operated by Mr. Rose from San Juan, Puerto Rico.

28.     Similarly, during the term of Plaintiff's employment, Genesis Coin, Inc. and Genesis Services, Inc. paid franchise taxes in Delaware where they are organized. *Id*. at ¶ 11. Genesis Services, Inc. also pays taxes in New Jersey where it has an employee. *Id*.   Like Plaintiff, these employees were also directed and supervised by Mr. Rose from Puerto Rico. *Id*. at ¶ 9.

29.      In sum, under the test outlined by the Supreme Court in *Hertz Corp*., the principal place of business for all three defendant entities in the Genesis Group is San Juan, Puerto Rico where Defendant Evan Rose managed and directed all of their business activities. Plaintiff implicitly accepts this fact by describing all three entities as "alter egos" of Mr. Rose.

30.      In light of all the facts outlined in his Petition regarding Defendant Evan Rose's control of these entities from Puerto Rico, Plaintiff cannot now oppose diversity jurisdiction based on the fact that Genesis Coin, Inc. listed a Texas address on required state registration or tax forms.  Indeed, as the Supreme Court explicitly recognized in *Hertz Corp*., if "the alleged 'nerve center' is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat—the courts should instead take as the 'nerve center' the place of actual direction, control, and coordination . . . ." *Hertz Corp*., 559 U.S. at 97.  In this case that is undoubtedly San Juan, Puerto Rico.  Accordingly, there is complete diversity of citizenship and removal is appropriate.

## III.      PROCEDURAL REQUIREMENTS

31.      **Timeliness of Removal.**  Defendant Genesis Coin, Inc. was served with a copy of the Petition on June 2, 2022.  *See* **Exhibit 3**. Service of process on Defendant began the 30-day time period for removing the case in accordance with 28 U.S.C. § 1446. *Shakouri v. Davis*, 923 F.3d 407, 409 (5th Cir. 2019) ("Section 1446(b)(1) requires notices of removal to be filed within thirty days of 'the date on which [the moving defendant] is formally served with process.'") (quoting *Murphy Bros. v. Michetti Pipe Stinging*, 526 U.S. 344, 356 (1999)).  Counsel for Defendants agreed to accept service for the remaining Defendants on June 15, 2022.

9

32.     Accordingly, this matter is being removed within 30 days after receipt by or service on Defendant of the initial pleading or summons, in accordance with 28 U.S.C. § 1446(b)(2)(B).

33.     **Pleadings and Process.** Pursuant to 28 U.S.C. § 1446(a), a copy of the docket sheet for the State Action, along with all other process, pleadings, returns, and orders on file in the State Action not otherwise attached herein is attached as **Exhibit 4.**

34.     **Notice Given:** Defendants will contemporaneously serve written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d), and will file a copy of this notice with the clerk of the District Court of Travis County in accordance with 28 U.S.C. § 1446(d).

35.     Accompanying this Notice of Removal is a Civil Cover Sheet and Supplemental Civil Cover Removal Sheet.

## IV.     RESERVATION OF DEFENSES

36.     The removal of this action does not waive Defendants' ability to assert any defenses in this action.  Specifically, but without limitation, Defendants assert that: (1) they did not commit any of the acts alleged; (2) Plaintiff has not sustained any injuries or damages as a result of any acts or omissions by Defendants or has failed to mitigate any such damages; (3) Plaintiff has no valid basis to seek equitable or injunctive relief; and (4) Plaintiff has failed to state a claim upon which relief can be granted as required by Federal Rule of Civil Procedure 12. Defendants reserve their right to amend or supplement this Notice of Removal.  Defendants further reserve their right to bring counterclaims against Plaintiff.

WHEREFORE, Defendants respectfully request that this case be removed from the District Court of Travis County, Texas, and that this Court exercise jurisdiction over this matter, and that this Court grant any and all other appropriate relief.

Respectfully submitted,

**JACKSON WALKER LLP**

By:    /s/ *Scott W. Weatherford*
Scott W. Weatherford
sweatherford@jw.com
State Bar No. 24079554
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2073 (Direct Dial)
(512) 391-2189 (Direct Facsimile)

HOLLAND & HART LLP

Jeremy B. Merkelson, *pro hac vice to be filed*
jbmerkelson@hollandhart.com
(202) 654-6919  (Direct Dial)
Michael J. O'Leary, *pro hac vice to be filed*
mjoleary@hollandhart.com
(202) 654-6922 (Direct Dial)
901 K Street NW
Suite 850
Washington, DC 20001
(202) 280-1041 (Direct Facsimile)

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

This is to certify that on the 23rd day of June 2022, a true and correct copy of the foregoing document has been electronically forwarded to the following:

Marcus L. Fifer (marcus@fifer.law)
Marcus L Fifer Law Firm, PLLC
P.O. Box 6501
Austin, TX 78762

Nilay U. Vora (nvora@voralaw.com)
Jeffrey A. Atteberry (jatteberry@voralaw.com)
William M. Odom (will@voralaw.com)
THE VORA LAW FIRM, P.C.
201 Santa Monica Blvd., Ste. 300
Santa Monica, CA 90401

*Attorneys for Plaintiff*

/s/ *Scott W. Weatherford*
Scott W. Weatherford

19011044_v5