# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |  |
|---|---|---|
| **SHAWN JOSEPH,** | § | |
| | § | |
| | § | |
| *Plaintiff/Counterclaim Defendant,* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 1:22-cv-615** |
| | § | |
| **GENESIS COIN, INC.; GENESIS** | § | |
| **SERVICES INC.; AQUARIUS** | § | |
| **MANAGEMENT CORP.; AND EVAN** | § | |
| **ROSE.** | § | |
| | § | |
| *Defendants/Counterclaim Plaintiff.* | § | |
| | § | |

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendants Genesis Coin, Inc., ("Genesis Coin"), Genesis Services, Inc. ("Genesis Services"); Aquarius Management Corp. ("Aquarius") and Evan Rose ("Rose") (collectively "Defendants"), by and through their undersigned counsel, hereby submit this Answer to Plaintiff's Original Petition.  Subject to the affirmative defenses set forth below, and without waiving any rights, privileges or defenses, Defendants answer as follows:

## DISCOVERY CONTROL PLAN

1.     Upon removal, discovery should be conducted in accordance with the Federal Rules of Civil Procedure and United States District Court, Western District of Texas, Local Rule CV-16.

## INTRODUCTION

2.     Answering the first sentence of paragraph 2, Defendants admit that Shawn Joseph ("Joseph") was formerly employed by Genesis Coin as Chief Intellectual Property Officer. Defendants deny the remaining allegations of the first sentence.  Answering the second, third, fourth and fifth sentences of paragraph 2, Defendants deny the allegations.  The allegations of the

sixth and seventh sentence of paragraph 2 attempt to characterize documents that speak for themselves and are therefore denied.  Answering the eighth and ninth sentences of paragraph 2, Defendants deny the allegations.  The tenth sentence of paragraph 2 is a characterization of the Original Petition and requires no response, but, to the extent a response is required, Defendants deny these allegations and aver that Plaintiff has suffered no injury, loss, or damages by reason of any act, omission, or conduct of Defendants.  Defendants deny that Plaintiff is entitled to any relief from Defendants.

## PARTIES AND SERVICE

3.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 3 and, on that basis, deny them.

4.      Defendants admit that Genesis Coin is a Delaware corporation with a registered agent in Texas, and that Joseph entered into an Employment Agreement and a Restricted Stock Grant Agreement with Genesis Coin.  Defendants deny the remaining allegations of paragraph 4.

5.      Defendants admit that Genesis Services is a Delaware corporation.  Defendants deny the remaining allegations of paragraph 5.

6.      Defendants admit that Aquarius Management Corporation has its headquarters in Puerto Rico and deny the remaining allegations of paragraph 6.

7.      Defendants admit that Evan Rose is an individual residing in San Juan, Puerto Rico and that Rose is the founder and Chief Executive Officer of Genesis Coin, Genesis Services and Aquarius.  The remaining allegations of paragraph 7 state legal conclusions which require no response, but to the extent a response is required, Defendants deny the allegations.

## JURISDICTION

8.      Paragraph 8 states a legal conclusion which requires no response.

## VENUE

9.      Paragraph 9 states a legal conclusion which requires no response.  Defendants deny that venue is proper in state court and have filed a notice of removal to federal court.

10.     Paragraph 10 states a legal conclusion which requires no response.  Defendants deny that venue is proper in state court and have filed a notice of removal to federal court.

11.     Paragraph 11 states a legal conclusion which requires no response.  Defendants deny that venue is proper in state court and have filed a notice of removal to federal court.

## FACTS

12.     Answering the first three sentences of paragraph 12, no response is required because Plaintiff merely characterizes opinions related to cryptocurrency and a television commercial featuring Matt Damon.  Answering the fourth sentence of paragraph 12, Defendants admit that Genesis Coin sells virtual currency kiosks and licenses proprietary software to operate the kiosks but denies the remaining allegations. Defendants admit the fifth sentence of paragraph 12.  Defendants deny the sixth and seventh sentences of paragraph 12.

13.     Defendants admit that Rose and Joseph met in Austin and that Joseph once worked for the United States Patent and Trademark Office ("USPTO").  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 13 and, on that basis, deny them.

14.     Defendants admit that Mr. Rose is now in his 30s, that he is an American citizen, that he previously lived and operated his businesses from Austin but moved to Puerto Rico in 2017, and deny the remaining allegations of paragraph 14.

15.     Paragraph 15 attempts to characterize a publication of the Bitcoin Reserve Journal, which speaks for itself and thus requires no response.  Defendants deny the allegations of

paragraph 15 to the extent they differ in any way from the text of the publication. Defendants admit Rose lived in San, Diego, California in 2012. Defendants deny the remaining allegations of paragraph 15.

16.     Paragraph 16 characterizes a publication of the Bitcoin Reserve Journal, which speaks for itself and thus requires no response. Defendants deny the allegations of paragraph 16 to the extent they differ in any way from the text of the publication. Defendants deny the remaining allegations of paragraph 16.

17.     Paragraph 17 attempts to characterize a publication of the Bitcoin Reserve Journal, which speaks for itself and thus requires no response. Defendants deny the allegations of paragraph 17 to the extent they differ in any way from the text of the publication. Defendants deny the remaining allegations of paragraph 17.

18.     Defendants admit that Genesis Coin was incorporated in Delaware as of May 10, 2013 and deny the remaining allegations of paragraph 18.

19.     Answering the first sentence of paragraph 19, Defendants admit Rose moved to Austin in June 2016. The remaining allegations of paragraph 19 attempt to characterize a publication of the Bitcoin Reserve Journal, which speaks for itself. Defendants deny the allegations of paragraph 19 to the extent they differ in any way from the text of the referenced publication. Defendants deny the remaining allegations of paragraph 19.

20.     Answering the first sentence of paragraph 20, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations and on that basis, deny them. Answering the second sentence of paragraph 20, Defendants admit that Joseph and Rose met at Capital Factory and deny the remaining allegations of the second sentence. Answering the third sentence of paragraph 20, Defendants admit that Joseph worked for the USPTO but deny the

remaining allegations.  Answering the fourth sentence of paragraph 20, Defendants admit Joseph and Rose traveled to countries outside of the United States together but deny the remaining allegations.  Answering the fifth sentence of paragraph 20, Defendants admit that Joseph provided Rose unsolicited advice regarding Defendants' pricing, but Defendants deny the remaining allegations.  Answering the sixth sentence of paragraph 20, Defendants admit that Rose wrote Joseph a check for $125,000, but deny the remaining allegations and affirmatively state that Rose wrote Joseph the check to assist him after Joseph was being faced with the loss of his tenured position at the USPTO and the risk of having income he earned in that position clawed back by the USPTO.  Answering the seventh sentence of paragraph 20, Defendants admit that Joseph never cashed the check referenced in paragraph 20.  Defendants deny the remaining allegations of paragraph 20.

21.     Paragraph 21 characterizes a publication of the Bitcoin Reserve Journal, which speaks for itself.  Defendants deny the allegations of paragraph 21 to the extent they differ in any way from the text of the publication.  Defendants deny the remaining allegations of paragraph 21.

22.     Paragraph 22 characterizes an email communication between Rose and Joseph, which speaks for itself.  Defendants deny the allegations of paragraph 22 to the extent they differ in any way from the text of the email.  Defendants deny the remaining allegations of paragraph 22.

23.     Defendants admit that Rose moved to Puerto Rico, that Joseph was not an employee or officer of Aquarius, and that Joseph was never granted shares of Aquarius stock.  Defendants deny the remaining allegations of paragraph 23.

24.     The allegations of Paragraph 24 attempt to characterize the tax laws of Puerto Rico. Defendants respond that such allegations constitute mere argumentative statements or conclusions

of law and do not constitute allegations of fact requiring a response.  However, to the extent a response is required, Defendants deny the allegations of paragraph 24.

25.     Defendants admit that Rose offered Joseph a job at Genesis Coin in 2019. Defendants deny the remaining allegations of paragraph 25.

26.     Defendants admit that on or about November 1, 2019, Joseph and Genesis Coin executed an Employment Agreement pursuant to which Joseph was employed as Chief Intellectual Property Officer of Genesis Coin.  Answering the remaining allegations of paragraph 26, the Employment Agreement speaks for itself.  Defendants deny the allegations of paragraph 26 to the extent they differ in any way from the text of the Employment Agreement.  Defendants deny the remaining allegations of paragraph 26.

27.     Answering paragraph 27, the Employment Agreement speaks for itself.  Defendants deny the allegations of paragraph 27 to the extent they differ in any way from the text of the Employment Agreement.  Defendants deny the remaining allegations of paragraph 27.

28.     Defendants deny the allegations of paragraph 28.  Specifically, the allegation that "Mr. Joseph would not have left his federal government job…" is a false statement, because prior to accepting employment with Genesis, Joseph was asked to resign, or he would be removed involuntarily, from his job with the USPTO for misconduct.

29.     Defendants admit the allegations of paragraph 29.

30.     Answering paragraph 30, the Stock Grant Agreement speaks for itself.  Defendants deny the allegations of paragraph 30 to the extent they differ in any way from the text of that agreement.  Defendants deny the remaining allegations of paragraph 30.

31.     Defendants deny the allegations of paragraph 31.

32.     Defendants deny the allegations of paragraph 32.

33.     Defendants deny the allegations of paragraph 33.

34.     Answering paragraph 34, Defendants deny those allegations which are legal conclusions which require no response in the first instance and deny the remaining allegations concerning Joseph's mental state.

35.     Defendants deny the allegations of paragraph 35.

36.     Defendants deny the allegations of paragraph 36.

37.     Defendants deny the allegations of paragraph 37.

38.     Answering paragraph 38, the email speaks for itself.  Defendants deny the allegations of paragraph 38 to the extent they differ in any way from the text of the email. Defendants deny the remaining allegations of paragraph 38.

39.     Answering the first sentence of paragraph 39, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations which characterize Joseph's reaction to an email and, on that basis, deny them.  Answering the second and third sentences of paragraph 39, Defendants deny the allegations.  Answering the remaining allegations of paragraph 39, Defendants state that the emails speak for themselves.  Defendants deny the allegations of paragraph 39 to the extent they differ in any way from the text of the emails.  Defendants deny the remaining allegations of paragraph 39.

40.     Defendants admit the allegations of paragraph 40.

41.     Answering the first five sentences of paragraph 41, Defendants state that the emails speak for themselves and deny the allegations to the extent they differ from the text of the emails. Defendants deny the fifth sentence of paragraph 41.  Answering the sixth sentence of paragraph 41, Defendants state that the emails and draft separation and release agreement speak for

themselves and deny the allegations to the extent they differ from the text of these documents. Defendants deny the remaining allegations of paragraph 41.

42.     Defendants admit the first sentence of paragraph 42.   Defendants deny those allegations of the second sentence of paragraph 42 to the extent they differ from the text of the emails, which speak for themselves.   Answering the third sentence of paragraph 42, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, which characterize Joseph's purported intentions, and on that basis, deny them.   Answering the fourth sentence of paragraph 42, the draft redemption agreement speaks for itself and Defendants deny the allegations of this sentence to the extent they differ in any way from the text of that document. Defendants deny the remaining allegations of paragraph 42.

43.     Defendants admit that Rose provided materials to Joseph, including a 2021 tax return for Genesis Coin, but deny the remaining allegations of the first sentence of paragraph 43. Answering the remaining allegations of paragraph 43, Defendants state that the emails speak for themselves and deny the allegations to the extent they differ in any way from the text of the emails. Defendants deny the remaining allegations of paragraph 43.

44.     Defendants admit that Defendants generated over $70 million in revenue and that Defendants paid all required taxes.   Defendants deny the remaining allegations of paragraph 44.

45.     Answering paragraph 45, the emails speak for themselves and Defendants deny the allegations to the extent they differ in any way from the text of the emails.   Defendants deny the remaining allegations of paragraph 45.

46.     Answering the first two sentences of paragraph 46, the letter speaks for itself. Defendants deny the allegations to the extent they differ in any way from the text of the letter. Defendants deny the remaining allegations of paragraph 46.

**COUNT ONE: RETALIATION**

47.     Defendants incorporate herein and reassert by reference the responses to the preceding paragraphs.

48.     The allegations of paragraph 48 state a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants deny the allegations.

49.     The allegations of paragraph 49 state a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants deny the allegations.

50.     Defendants deny the allegations of paragraph 50.

51.     Defendants deny the allegations of paragraph 51.

**COUNT TWO: BREACH OF CONTRACT**

52.     Defendants incorporate herein and reassert by reference the responses to the preceding paragraphs.

53.     The allegations of paragraph 53 state a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants admit the allegations.

54.     Defendants deny the allegations of paragraph 54.

55.     Defendants deny the allegations of paragraph 55.

56.     Defendants deny the allegations of paragraph 56.

57.     Defendants deny the allegations of paragraph 57.

58.     Defendants deny the allegations of paragraph 58.

59.     Defendants deny the allegations of paragraph 59.

**COUNT THREE: BREACH OF THE IMPLIED COVENANT
OF GOOD FAITH & FAIR DEALING**

60.     Defendants incorporate herein and reassert by reference the responses to the preceding paragraphs.

61.     The allegations of paragraph 61 state a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants admit the allegations.

62.     The allegations of paragraph 62 state a legal conclusion and therefore no response is required.  To the extent a response is required, Defendants deny the allegations.

63.     Defendants deny the allegations of paragraph 63.

64.     Defendants deny the allegations of paragraph 64.

65.     Defendants deny the allegations of paragraph 65.

### COUNT FOUR: FRAUDULENT INDUCEMENT

66.     Defendants incorporate herein and reassert by reference the responses to the preceding paragraphs.

67.     Defendants deny the allegations of paragraph 67.

68.     Defendants deny the allegations of paragraph 68.

69.     Defendants deny the allegations of paragraph 69.

70.     Defendants deny the allegations of paragraph 70.

71.     Defendants deny the allegations of paragraph 71.

72.     Defendants deny the allegations of paragraph 72.

### COUNT FIVE: STRING-ALONG FRAUD

73.     Defendants incorporate herein and reassert by reference the responses to the preceding paragraphs.

74.     Defendants deny the allegations of paragraph 74.

75.     Defendants deny the allegations of paragraph 75.

76.     Defendants deny the allegations of paragraph 76.

77.     Defendants deny the allegations of paragraph 77.

78.     Defendants deny the allegations of paragraph 78.

79.     Defendants deny the allegations of paragraph 79.

## COUNT SIX: UNJUST ENRICHMENT

80.     Defendants incorporate herein and reassert by reference the responses to the preceding paragraphs.

81.     Defendants deny the allegations of paragraph 81.

82.     Defendants deny the allegations of paragraph 82.

83.     Defendants deny the allegations of paragraph 83.

84.     Defendants deny the allegations of paragraph 84.

## DAMAGES

85.     Defendants incorporate herein and reassert by reference the responses to the preceding paragraphs.  Defendants deny that Plaintiff has suffered any injury, loss, or damages by reason of any act, omission, or conduct on the part of the Defendants.  Defendants also deny that Plaintiff is entitled to any relief from Defendants.

## ATTORNEYS' FEES AND COSTS

86.     Defendants incorporate herein and reassert by reference the responses to the preceding paragraphs.  The allegations of paragraph 86 state a legal conclusion and no response is required.   To the extent a response is required, Defendants deny that Plaintiff is entitled to attorneys' fees, costs or any other relief sought in the Original Petition, or to any relief at all from Defendants and aver that Genesis Coin is entitled to its attorney's fees and costs from Plaintiff as the non-breaching party.

## EXEMPLARY DAMAGES

87.     Defendants incorporate herein and reassert by reference the responses to the preceding paragraphs.  The allegations of paragraph 87 state a legal conclusion and no response is required.  To the extent a response is required, Defendants deny that Plaintiff is entitled to exemplary damages or any other relief from Defendants.

## CONDITIONS PRECEDENT

88.     The allegations of paragraph 88 state a legal conclusion and no response is required. To the extent a response is required, Defendants deny the allegations of paragraph 88.

## RULE 193.7 NOTICE

89.     The allegations or averments of paragraph 89 related to the Texas Rules of Civil Procedure and are no longer applicable given Defendants removed this lawsuit to federal court.

## DEMAND FOR JURY TRIAL

90.     Defendants demand a jury trial.

## NOTICE REGARDING INITIAL DISCLOSURES

91.     The allegations or averments of paragraph 91 relate to the Texas Rules of Civil Procedure and are no longer applicable given Defendants removed this lawsuit to federal court.

92.     The allegations or averments of paragraph 92 relate to the Texas Rules of Civil Procedure and are no longer applicable given Defendants removed this lawsuit to federal court.

## GENERAL DENIAL

Defendants deny each and every allegation contained in the Original Petition that is not specifically admitted above.

## PRAYER FOR RELIEF

Defendants deny that Plaintiff has suffered any injury, loss, or damages by reason of any

act, omission, or conduct on the part of the Defendants.  Defendants also deny that Plaintiff is entitled to the relief sought in the Original Petition, or to any relief at all from Defendants.

## AFFIRMATIVE DEFENSES

1.     The Original Petition fails to state a claim upon which relief may be granted.

2.     The claim for retaliation fails because Texas law does not provide a cause of action for retaliation based on the acts alleged to have occurred in the Original Petition.

3.     Plaintiff failed to exhaust administrative remedies for his alleged statutory claim for retaliation, to the extent such claim is even recognized under Texas law.

4.     Plaintiff's claim for breach of contract is barred by the doctrine of party first in breach.

5.     Plaintiff's claim for breach of contract is barred against those Defendants who were not in privity of contract with Plaintiff.

6.     Plaintiff's claim for breach of contract is barred by the plain language of the underlying agreement(s) upon which such claim purports to be based.

7.     The claim for breach of the implied covenant of good faith and fair dealing fails because Texas law does not recognize such claim.

8.     The claim for fraudulent inducement fails because Defendants did not make any alleged misrepresentations to Plaintiff to induce him to work for Genesis Coin and, in any event, Plaintiff did not accept employment for Genesis Coin based on any alleged misrepresentations; rather Plaintiff was unemployed, in a fragile mental state, and needed a job, which Mr. Rose graciously offered to him.

9.     The claim for string-along-fraud fails because Defendants did not make any alleged misrepresentations to Plaintiff to induce him to continue working for Genesis Coin and, in any

event, Plaintiff did not continue working for Genesis Coin based on any alleged misrepresentations nor could his reliance on any such alleged misrepresentations have been reasonable under the circumstances.

10.    The claim for unjust enrichment fails under Texas law because there exist valid written agreements governing the subject matter at issue.

11.    Plaintiff has failed to take reasonable steps to mitigate his alleged damages, if any.

12.    Defendants have performed their obligations, if any, toward Plaintiff in accordance with all statutory, regulatory, constitutional and common-law requirements.

13.    If Plaintiff was damaged as alleged in the Original Petition, said damages were not proximately caused by Defendants.

14.    Genesis Coin had a legitimate, non-retaliatory reason for any adverse action taken against Plaintiff and had Cause to terminate his employment under the Employment Agreement.

15.    Plaintiff's claims are barred, in whole or in part, because he failed to satisfy all conditions precedent.

16.    Plaintiff's claims are barred, in whole or in part, based on the doctrine of unclean hands.

17.    Any acts or omissions attributed to Defendants in the Original Petition were not willful in that Defendants did not know or show reckless disregard for whether its conduct violated the federal or state law.

18.    Plaintiff's alleged damages are barred, in whole or in part, based on the after acquired evidence doctrine based on his conduct while employed at Genesis Coin.

19.    Plaintiff's alleged damages are offset by the damages he has caused to Defendants.

20.     Defendants reserve the right to amend this Answer and to raise any additional defenses which the evidence in discovery may reveal.

21.     Defendants are entitled to their attorneys' fees and costs in defense of the claims asserted by Plaintiff, the breaching party, under the Employment Agreement.

## COUNTERCLAIM

Genesis Coin, Inc. ("Genesis Coin"), and Aquarius Management Corp. ("Aquarius") and Evan Rose ("Rose") (collectively "Genesis Group") assert this Counterclaim against Plaintiff/Counterclaim Defendant Shawn Joseph ("Joseph"), alleging as follows:

## NATURE OF THIS ACTION

1.     Joseph was hired by Genesis Coin in 2019 after he had no choice but to: (1) resign, or be fired, from the United States Patent and Trademark Office ("USPTO") for documented misconduct, including submitting provably false time records and engaging in other behavior such that USPTO determined he was not capable of rehabilitation; or (ii) contest and appeal the USPTO's findings related to Joseph's documented misconduct, which Mr. Joseph chose not to do. Specifically, the USPTO determined that Joseph was paid for 448 hours and 25 minutes of time he claimed, but did not work, resulting in significant personal gain to Joseph.  The USPTO also determined that Joseph worked an additional 157 hours and 40 minutes outside of the allowed work hour time band.

2.     Rose, the founder and owner of the enterprise, was there to give Joseph a second chance.  He offered him employment as the "Chief Intellectual Property Officer" at Genesis Coin despite the circumstances of his departure from the USPTO.  Joseph's own public writings on Reddit, a social news aggregation, content rating and discussion website, reveal his fragile state at the time that Rose gave him an opportunity with Genesis Coin.  Specifically, Joseph posted on

Reddit that he had lost his job and was wrecked after his relationship with his girlfriend had ended. Joseph also frequently posted in the "Suicide Watch" and "Depression" forums on Reddit.  Joseph had posted on a Reddit thread titled "About to get fired" that he "got cheated out of a federal remote job [he] worked 9 years to climb up at."  Referring to Rose, he publicly posted that he was "very lucky right now to have a friend that that hired [him]."

3.     But, despite the second chance that Genesis gave him in 2019, Joseph spent the bulk of his time serving his own interests and at his employer's expense. As Rose later learned, Joseph was secretly using confidential information and property belonging to Genesis Coin to develop and manage his own personal patent portfolio, including in his applications to the USPTO.

4.     Joseph treated Genesis Coin's IP forms as his own, engaging in wholesale copying and lifting of language regarding Genesis Group's proprietary business information relating to kiosk-based vending equipment associated with cryptocurrencies and passing such company information off as Joseph's own. Joseph successfully obtained one patent, submitted at least seven provisional applications and five non-provisional applications, using Genesis Group's information.

5.     Since being terminated for Cause, Joseph has retained at least one device and, upon information and belief, hordes of other documents containing Genesis Group confidential business information.  He mass emailed in January 2022 more than 150 emails containing company data to his personal Gmail account.  He now claims to have "lost" a Genesis work laptop that he did not report as having "lost" until after he was terminated.

6.     Genesis Group asserts this counterclaim to stop Joseph from using its trade secrets, patent forms and other proprietary data; to require Joseph to assign to Genesis Group all rights in and to patents submitted to the USPTO during Joseph's employment with Genesis Coin under the

assignment of inventions clause of his Employment Agreement; to require return of all Genesis Group property, tangible or intangible, in his possession, custody or control; and to enjoin Joseph from being able to use the fruits of his illegal conduct by becoming a patent troll against Genesis Group or its customers in the cryptocurrency space. Genesis Group also seeks damages as a result of Joseph's misconduct and its reasonable attorney's fees and costs incurred as a result of Joseph's unlawful actions as authorized by his Employment Agreement.

## PARTIES

7.     Counterclaimant Genesis Coin is incorporated under the laws of the State of Delaware and maintains a principal place of business in Puerto Rico.

8.     Counterclaimant Aquarius is incorporated under the laws of Puerto Rico and maintains a principal place of business in Puerto Rico.

9.     Counterclaimant Rose is an individual and maintains a principal place of residence in Puerto Rico.

10.     Counterclaim-Defendant Joseph is a former employee of Genesis Coin, and, upon information and belief, resides at 1623 E 10th St., Austin, TX 78702.  As such, this Court has personal jurisdiction over Joseph.

## JURISDICTION AND VENUE

11.     Pursuant to 28 U.S.C. § 1331, this Court has subject-matter jurisdiction over this counterclaim because this case arises under the federal Defend Trade Secrets Act.  Other claims asserted in this Complaint are part of the same case or controversy and invoke the Court's supplemental jurisdiction pursuant to 28 U.S. Code § 1367.

12.     Pursuant to 28 U.S.C. § 1332, this Court has subject-matter jurisdiction over this counterclaim, because it is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

13.     Pursuant to 28 U.S.C. § 1391(b)(1), this Court is the proper venue for this matter, because Defendant Shawn Joseph resides in the Western District of Texas.  Alternatively, pursuant to 28 U.S.C. § 1391(b)(2), this Court is the proper venue for this matter, because a substantial part of the events giving rise to this action took place in the Western District of Texas.

## FACTUAL ALLEGATIONS

14.     Genesis Coin is engaged in the business of selling virtual currency ATMs that allow for the transfer of cryptocurrency around the world.

15.     Genesis Coin's ATM terminals are installed with proprietary processing software owned and developed by Rose.  For the last five years, Rose has developed that software as the CEO and founder of Aquarius. Genesis Coin has permission from Aquarius to license to customers the proprietary software developed by Rose in his role as CEO and founder of Aquarius.

16.     Both Aquarius and Genesis Coin are 100 percent owned and controlled by Rose.

17.     Joseph was aware that Genesis Coin and Aquarius were founded by Rose and that Rose controlled both organizations. Joseph understood that all proprietary processing software used by Genesis Coin was managed by Aquarius under Rose's direction and developed by Rose.

18.     In the summer of 2019, Rose was there as a friend to Joseph to help him in the aftermath of his misconduct-related departure from the USPTO.  He had initially offered to pay Joseph $50,000 annually for a part-time position with Genesis Coin.  Over a period of months, Rose and Joseph discussed the terms of a more involved employment agreement, and the salary Rose offered to Joseph was increased to $110,000 to reflect Joseph's expected full-time

commitment to Genesis Coin. Joseph's full-time salary with the USPTO had been $128,620. At no point during the pre-hire discussions with Joseph did Rose make any representations regarding the ownership of Genesis Group's intellectual property.  Rose did not even offer Joseph equity in Genesis Coin or any other entity at the inception of his employment much less make such a promise to induce him to accept the job.

19.     Genesis Coin ultimately hired Joseph on November 1, 2019, to fill the role of Chief Intellectual Property Officer.  As a condition of Joseph's employment with Genesis Coin, Joseph executed an employment agreement on November 1, 2019 ("Employment Agreement").

20.     The Employment Agreement is a valid and enforceable contract supported by ample consideration, including, but not limited to, Joseph's employment for compensation.

21.     Pursuant to Section 2 of the Employment Agreement, Joseph's duties were defined as follows:

> Duties. Throughout the term of Employee's employment, the Employee shall assist the Company in creating and implementing the Company's intellectual property strategy, with particular emphasis on analyzing the Company's existing portfolio of products to determine and execute on intellectual property opportunities. The Employee shall report the results of his efforts to Evan Rose (hereinafter the "Founder") and Peter Sentowski (hereinafter the "President") or as may be otherwise directed by the Company from time to time, and shall consult with the Founder/President in determining specific objectives and direction of the Company's IP strategy. The Employee shall at all times perform his duties and discharge his responsibilities under this Agreement diligently and conscientiously, and to the best of his ability. The Employee shall not have the authority to contractually bind the Company at this time but would be called to do so upon execution of an offer letter and designation as an officer of the company.

(**Ex. 1**, Section 2).

22.     To assist in exercising these duties, Genesis Coin, at its sole expense, provided Joseph with a computer.

23.     In working for Genesis Coin, Joseph received confidential access to sensitive, proprietary, and valuable technical information regarding Genesis Group's virtual payment processing software and products as well as Genesis Group's sensitive business and financial information.

24.     Specifically, Genesis Group provided Joseph with access to confidential email accounts; business strategy and goals; and company databases, including but not limited to a Google Drive folder housing all of Genesis Group's intellectual property information and working documents, a Github repository containing proprietary software source code, and other competition-sensitive material, which contain trade secrets or other proprietary information.

25.     Section 8 of Joseph's Employment Agreement prohibits the disclosure of Genesis Coin's Confidential Information unless directed to do so by Genesis Coin.  Specifically, Section 8 reads:

> (a) The Employee shall never, unless directed by the Company, either during the period of the Employee's employment by the Company or thereafter, disclose to any other individual or entity any Confidential Information. The Employee acknowledges and agrees that all Confidential Information is proprietary to the Company, is extremely important to the Company's business, and that the disclosure of such Confidential Information to a Competitor could have a materially and adversely affect the Company, its business and its customers.

> (b) Upon any termination of the Employee's service with the Company, the Employee shall leave with or return immediately to the Company any and all records and any and all compositions, articles, devices and other similar or related items that disclose or contain any Confidential Information, including all copies or specimens thereof, whether in the Employee's possession or under the Employee's control, or whether prepared by the Employee or by others.

> (c) For purposes of this Section, the term "Company" shall refer to the Company and to any corporation or other entity that is owned or controlled, directly or indirectly, by Company or that is under common ownership or control with the Company.

(d) For purposes of this Agreement, the term "Confidential Information" shall mean information in any form that is not generally known to the public that relates to the Company's past, present or future operations, processes, products or services, including without limitation information that relates to the Company's product designs or to the applications or uses of the same, or to any market research, customer development, marketing, purchasing, accounting, maintenance, operations, engineering, merchandising, advertising, selling, leasing, financing or business methods or techniques (including without limitation customer lists, records of customer purchases and requirements, and like and similar information relating to actual or prospective customers) that is or may be related thereto including any future business the Company may engage in during the term of Employee's employment. All information disclosed to the Employee or to which the Employee obtains access during any period of employment with the Company, whether pursuant to this Agreement or otherwise, or to which the Employee obtains access by reason of this Agreement or his service to the Company, that the Employee has a reasonable basis to believe is or may be Confidential Information, shall be presumed for purposes of this Agreement to be Confidential Information.

(**Ex. 1**, Section 8(a)-(d)).

26.     Further, Section 9 of Joseph's Employment Agreement requires immediate disclosure in writing of each Invention involving Genesis Coin's business following discovery or completion and requires Joseph to assign to Genesis Coin all rights in and to all Inventions. Specifically, Section 9 of Joseph's Employment Agreement reads:

(a) Immediately upon its discovery or completion, the Employee shall promptly and fully disclose each Invention involving the Company's business in writing to the Company. The Employee shall make this disclosure regardless of whether an Invention is discovered, conceived or completed by the Employee alone or jointly with others.

(b) The Employee hereby assigns, and agrees to assign, to the Company, or nominee, all of the Employee's rights in and to all Inventions and in and to any and all letters patent or copyrights or applications therefor at any time granted or made, whether in the United States of America or in any foreign nation, upon or with respect to any Invention involving the Company's business discovered while executing on Company's objectives.

(c) The Employee shall from time to time execute, acknowledge and deliver promptly to the Company (without charge to the Company but at the expense of the Company) such written instruments and documents, and shall take such other and further action with respect to any Invention, as may be necessary or

21

desirable in order to enable the Company to obtain and maintain patents and/or copyrights therein, or to vest the entire right title and interest thereto in the Company.

(d) The Company shall not assert any rights under any Inventions as having been made or acquired by the Employee prior to the commencement of the Employee's service with the Company.

(e) For purposes of this Agreement, the term "Inventions" means discoveries, developments, improvements and ideas (whether or not shown or described in writing or reduced to practice) and works of authorship (including computer software), whether or not patentable or copyrightable, (i) that relate directly to the kiosk, digital signage point of sale equipment, cash handling equipment, and point of interaction equipment business; (ii) that relate to the Company's actual or demonstrably anticipated research or development with respect to the any of the foregoing; (iii) that result from any services at any time performed by the Employee for the Company, whether pursuant to this Agreement or otherwise; (iv) for which equipment, supplies, facilities or trade secret information of the Company is used; or (v) that are developed in pursuance of the Employee's service to the Company pursuant to this Agreement.

(**Ex. 1**, Section 9(a)-(e)).

27.     At all times, Genesis Group took reasonable efforts to maintain the secrecy of Genesis Group's property, including through the use of encryption, limiting access to information to individuals on a need-to-know basis, and entering into employment agreements with employees that expressly acknowledge the importance of maintaining the secrecy of confidential information.

28.     On or about March 15, 2022, Genesis Coin decided to terminate its employment relationship with Joseph, pursuant to the Employment Agreement, which allowed either Genesis Coin or Joseph to terminate Joseph's employment with 30 days' written notice for any reason or no reason at all.  Genesis Coin provided Joseph with a draft severance agreement that generously offered him compensation through November 1, 2022, even though it could have terminated without Cause under the Employment Agreement and with only 30 days' notice. Genesis Coin also offered to redeem from Joseph at $200 per share the 1,000 unvested restricted non-voting common stock shares in Genesis Coin that Joseph then held at the time subject to the Restricted

Stock Grant Agreement appended as Exhibit C to the Original Petition ("Grant Agreement"). Genesis Coin generously made this offer, even though it could have redeemed the shares at one-eighth the cost, or $25 per share, after Joseph's separation for any reason pursuant to the Grant Agreement.

29.     The Restricted Stock Grant Agreement was signed months after Joseph entered into the Employment Agreement.  Joseph had no expectation that he would be offered the Restricted Stock Grant Agreement.  Upon receipt of the Restricted Stock Grant Agreement, Joseph did not try to negotiate its terms and was grateful to have received it for nothing in return.  Indeed, when Joseph sent Rose the executed the Restricted Stock Grant Agreement, Joseph emailed Rose "signed w nothing but gratitude man."

30.     However, while these offers were outstanding for several days, Rose did independent research and learned that, during Joseph's employment, Joseph had secretly submitted and obtained patents under his own name using his employer's property and in relation to his employer's business in violation of Sections 8 and 9 of the Employment Agreement.

31.     Specifically, Rose discovered that Joseph had filed at least five provisional U.S. patent applications (U.S. Pat. App. Ser. Nos. 63/190,513; 63/189,223; 63/161,742; 63/154,565; and 63/153,087) and seven nonprovisional U.S. patent applications (U.S. Pat. App. Ser. Nos. 17/327,727; 17/339,861; 17/392,145; 17/504,204; 17/505,379; 17/670,436; and 17/671,039) all following the effective date of the Employment Agreement.  At least one of these applications has been granted U.S. patent protection (U.S. Pat. No. 11,250,112).

32.     Rose learned that Joseph had filed 25 personal patent applications in 2021 and eight additional patent applications in 2022.  The work Joseph completed on his own behalf, and for his own benefit, outpaced the work he was being compensated to perform for Genesis Coin.

Beginning in 2021 and until Joseph's employment was terminated in 2022, he did far less to advance the patent portfolio of his employer than he did his own personal portfolio.

33.     Upon the "discovery or completion" of each of these patents, Genesis Group became the rightful owner of the patents filed by Joseph under the inventions assignment provisions of Employment Agreement.

34.     Joseph's filed patents involve Genesis Group's business and Joseph's employment for Genesis Coin.  For instance, the specification for U.S. Pat. No. 11,250,112 describes subject matter that can be deployed through "virtual currency processing software services…installed on terminals or via backend/cloud servers, or both," which is directly related to the products and services Genesis Group offers.

35.     Further, Joseph's filed patents use Genesis Group's information and other resources.  For example, the specification for U.S. Pat. No. 11,250,112 sets forth a list of acronyms that is identical to those in Genesis Group's patent application U.S. Pat. Ser. No. 17/074,044. These acronyms are listed in a unique and arbitrary manner, yet Joseph's filing copies them word for word.  Other similarities include the use of the phrase "[t]he query may be communicated from the software service provider as an encrypted payload that is decrypted at the…" which appears verbatim in both the '112 and '044 filings.

36.     Upon information and belief, prior to his employment with Genesis Coin, Joseph had no experience in the development of software related to virtual currencies, terminals, or payment processing and did not have the knowledge to independently file for or obtain patents on these subjects.

37.     In approving Joseph's U.S. Pat. No. 11,250,112, the examiner, during review, specifically cited a granted patent (U.S. Pat. No. 10,904,259) and a pending patent application

(U.S. Pub. No. 2021/0288951 A1) in Rose's name as Genesis Group's founder and CEO.  The examiner's identification of this granted patent and patent application further established a connection between the subject matter of the '112 patent and Genesis Group's development initiatives.

38.     Upon information and belief, the material used in and analysis supporting Joseph's patent filings directly use, or derive from the improper use and disclosure of, Genesis Group's confidential information, including the use and misappropriation of software licensed from Aquarius and/or the forms that Genesis Coin developed for its own patent portfolio.

39.     While employed at Genesis Coin, Joseph did not inform Genesis Coin of any of these filings, and Joseph has listed himself as the sole inventor for, and has claimed ownership over the rights to, the inventions disclosed in these filings.

40.     In addition to the above, on January 6, 2021, Joseph shared the company's intellectual property Google Drive folder with an unauthorized individual wholly unrelated to Genesis Group.

41.     Further, in or about January 2022, or about two months before Joseph's termination, Joseph forwarded approximately 150 emails from his work email address to his personal email address.  This mass forwarding of emails related to Genesis Group's business and contain confidential material including trade secrets and other proprietary information.

42.     During his employment with Genesis Coin, Joseph engaged in multiple other business endeavors without disclosing them to Rose or anyone else at Genesis Group, including businesses involving cryptocurrency non-fungible tokens, a blog related to patent examination, a business entity focused on bringing people together to host or attend supper clubs, a social networking business called SixStreet, and a clothing apparel company.

43.     Joseph also developed a paid online course designed to teach the patent filing process and advertised his position as Chief Intellectual Property Officer at Genesis Coin to sell his course.

44.     Joseph engaged in his own business endeavors at the expense of his productivity on behalf of Genesis Coin, continuing a pattern from his days as a USPTO Examiner of collecting a full-time paycheck while not doing full-time work for his employer.

45.     Based on Rose's discovery of Joseph's pattern of misconduct and self-dealing, Genesis Coin classified its termination of Joseph as one for Cause under the Employment Agreement and rescinded its prior offers of severance and stock redemption and reclaimed Joseph's shares at zero dollars as it was entitled to do under the Grant Agreement.

46.     Immediately following Joseph's termination, representatives of Genesis Coin demanded that Joseph return all company property, including Joseph's work laptop, all associated credentials (*e.g.*, account IDs and passwords), as well as any other devices, thumb drives, external hard drives, cloud-based accounts, electronic or hard copy documents, or other similar or related items that disclose or contain any Confidential Information, as defined in the Employment Agreement.

47.     These demands were repeated on at least five separate occasions; however, Joseph has refused to return all of the items requested, including Joseph's work computer, which upon information and belief, contains Genesis Group's confidential information and trade secrets, including its proprietary software source code.

48.     After his employment was terminated, Joseph's counsel represented that the screen on his work computer had cracked, at some point prior to June 2021, while he was employed at Genesis Coin and that he stopped using the work computer at that time.

49.     Joseph did not disclose to Genesis Coin that he had lost or broken his laptop while he was employed at Genesis Coin and thus had waited more than 9 months to inform his employer of this event and only after he was terminated for Cause.  Genesis Coin was unable to utilize the insurance policy "Apple Care" which protected the work computer Genesis Coin supplied to Joseph, because Joseph never reported to Genesis Coin that he was no longer using the work computer and was using his personal devices instead.

50.     Following his termination, and upon Genesis Coin's request for the work computer, Joseph claimed he believed the work computer with a cracked screen was located in one of his homes, which is located in Washington, D.C.  Joseph claimed he would search for the work computer in Washington, D.C., and return it to Genesis Coin.

51.     Joseph later claimed that after he cracked the screen of his work computer, he then also misplaced the work computer at some unknown point in time and that he did not know its whereabouts and that it was "lost."

52.     In addition to the computer purchased by Genesis Coin for the purpose of Joseph conducting Genesis Coin business, Joseph used two other personal computers to conduct Genesis Coin business.  Upon information and belief, these personal laptops contain confidential information and trade secrets.

53.     While employed at Genesis Coin, Joseph never disclosed to Genesis Coin that he was using his own personal computers to perform work for Genesis Coin, which included work on confidential information and trade secrets.

54.     Upon information and belief, Joseph remains in possession of the work computer and his explanations regarding its location are false, untrue and/or fraudulent.

## CLAIMS FOR RELIEF

### COUNT 1

**Breach of Contract: Improper Disclosure of Confidential Information**

55.     Genesis Group incorporates Paragraphs 1 through 54 as if fully stated herein.

56.     The Employment Agreement is a valid and binding contract supported by good and valuable consideration. Specifically, Joseph entered into the Employment Agreement in exchange for employment and for compensation.

57.     Throughout Joseph's employment, Genesis Coin has performed its duties and responsibilities under Joseph's Employment Agreement.

58.     Pursuant to the Employment Agreement, Joseph is prohibited from disclosing Genesis Group's Confidential Information without Genesis Group's prior authorization and is required to return all Confidential Information upon termination of employment.

59.     Upon information and belief, Joseph has disclosed Genesis Group's Confidential Information by (1) providing access to Genesis Group's Google Drive intellectual property folder to unaffiliated and unapproved individuals and (2) disclosing such information in his personal patent applications.

60.     Further, Joseph has breached his Employment Agreement by forwarding approximately 150 emails from his work email address to his personal email address without returning such emails to Genesis Coin.

61.     Further, Joseph has breached his Employment Agreement by failing to diligently and conscientiously perform his duties and discharge his responsibilities and by using Confidential Information for his own personal benefit.

62.     Further, Joseph has breached his Employment Agreement by failing to disclose each Invention and take such other action with respect to any Invention as required under the Employment Agreement. As a direct and proximate result of Joseph's breach of his Employment Agreement, Genesis Group has suffered and continues to suffer great and irreparable harm.  The damages are considerable and continuing and thus not fully capable of ascertainment at this time. Genesis Group has suffered damages in an amount to be determined at trial.

### COUNT 2
**Anticipatory Breach of Contract: Improper Use and Disclosure of Confidential Information.**

63.     Genesis Group incorporates Paragraphs 1 through 62 as if fully stated herein.

64.     The Employment Agreement is a valid and binding contract supported by good and valuable consideration. Specifically, Joseph entered into the Employment Agreement in exchange for employment for compensation.

65.     Pursuant to the Employment Agreement, Joseph is prohibited from disclosing Genesis Group's Confidential Information without Genesis Group 's prior authorization.

66.     By sending emails from Joseph's work email address to his personal email address, Joseph has demonstrated a clear intention to violate the confidentiality provisions of the Employment Agreement.

67.     Joseph has provided no excuse or justification for retaining these work emails.

68.     As a direct and proximate result of Joseph's anticipatory breach of his Employment Agreement, Genesis Group has suffered and continues to suffer great and irreparable harm.  The damages are considerable and continuing and thus not fully capable of ascertainment at this time. Genesis Group has suffered damages in an amount to be determined at trial.

**COUNT 3**
**Breach of Contract: Failure to Disclose and Assign Inventions**

69.    Genesis Group incorporates Paragraphs 1 through 68 as if fully stated herein.

70.    The Employment Agreement is a valid and binding contract supported by good and valuable consideration. Specifically, Joseph entered into the Employment Agreement in exchange for employment and for compensation.

71.    Throughout Joseph's employment, Genesis Coin has performed its duties and responsibilities under the Employment Agreement.

72.    Pursuant to the Employment Agreement, Joseph is required to notify Genesis Coin of any Inventions and to assign all rights in and to Inventions made during Joseph's employment that involve Genesis Group's business.

73.    Joseph submitted numerous patents, on his own behalf, during his employment with Genesis Coin.

74.    The patents submitted by Joseph during his employment involve Genesis Group's business and/or made use of Genesis Coin's property.

75.    Joseph neither notified Genesis Coin of his personally filed patents nor assigned rights in and to these patents to Genesis Coin.

76.    As a direct and proximate result of Joseph's breach of his Employment Agreement, Genesis Group has suffered and continues to suffer great and irreparable harm.  The damages are considerable and continuing and thus not fully capable of ascertainment at this time.  Genesis Group has suffered damages in an amount to be determined at trial.

**COUNT 4**
**Misappropriation of Trade Secrets: Defend Trade Secrets Act**

77.    Genesis Group incorporates Paragraphs 1 through 76 as if fully stated herein.

78.     During his employment for Genesis Coin, Joseph had access to and did access Genesis Group's confidential and proprietary information, including but not limited to its current and planned intellectual property, source code, and business strategy and goals.  This confidential and proprietary information constitutes trade secrets within the meaning of 18 U.S.C. § 1839(3).

79.     Genesis Group exerts substantial efforts to keep its intellectual property, source code, and business strategy and goals secret.

80.     Genesis Group derives economic value from such secrecy by depriving competitors from use of Genesis Group's trade secrets to gain competitive advantage.

81.     While employed by Genesis Coin, however, Joseph misappropriated Genesis Group's trade secrets within the meaning of 18 U.S.C. § 1839(5) by using the trade secrets in conjunction with personal patent applications.

82.     Further, Joseph misappropriated Genesis Group's trade secrets within the meaning of 18 U.S.C. § 1839(5) by permitting unauthorized access to Genesis Group's Google Drive folder containing Genesis Group's intellectual property information and working documents.

83.     Joseph also misappropriated Genesis Group's trade secrets within the meaning of 18 U.S.C. § 1839(5) by emailing approximately 150 emails from his work email address to his personal email address mere months before his termination and retaining such emails following his termination.

84.     Joseph also misappropriated Genesis Group's trade secrets within the meaning of 18 U.S.C. § 1839(5) by retaining post-termination at least three separate devices that contain, on information and belief, large repositories of Genesis Group data, all of which he has never returned.

85.     Joseph's misappropriation of Genesis Group's trade secrets is continuing and ongoing, and Genesis Group will suffer irreparable harm if Joseph's misconduct is not enjoined.

86.     As a result of Joseph's misappropriation of trade secrets, Genesis Group will suffer actual losses in an amount to be determined at trial.

87.     Joseph's misappropriation of Genesis Group's trade secrets entitles Genesis Group to immediate injunctive relief and damages pursuant to 18 U.S.C. § 1836(b)(3).

88.     Given that Genesis Group's trade secrets relate to its worldwide business, Joseph's misappropriation affects interstate commerce.

89.     At all material times, Joseph has acted willfully, maliciously, and in bad faith.

90.     As a result of Joseph's misappropriation, Genesis Group will suffer irreparable harm.

## COUNT 5
### Misappropriation of Trade Secrets: Texas Uniform Trade Secrets Act

91.     Genesis Group incorporates Paragraphs 1 through 90 as if fully stated herein.

92.     During his employment for Genesis Coin, Joseph had access to and did access Genesis Group's confidential and proprietary information, including but not limited to its current and planned intellectual property, source code, and business strategy and goals.  This confidential and proprietary information constitutes trade secrets with the meaning of the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem.§ 134A.002(6).

93.     Genesis Group exerts substantial efforts to keep its intellectual property, source code, and business strategy and goals secret.

94.     Genesis Group derives economic value from such secrecy by depriving competitors from use of Genesis Group's trade secrets to gain competitive advantage.

95.     Joseph benefited from and used Genesis Group's confidential and proprietary information.  And at all times, Joseph understood this was Genesis Group's confidential and proprietary information.

96.     While employed by Genesis Coin, however, Joseph misappropriated Genesis Group's trade secrets within the meaning of Tex. Civ. Prac. & Rem.§ 134A.002(3) and used them in conjunction with personal patent applications.

97.     Further, Joseph misappropriated Genesis Group's trade secrets within the meaning of Tex. Civ. Prac. & Rem.§ 134A.002(3) by permitting unauthorized access to Genesis Group's Google Drive folder containing Genesis Group's intellectual property information and working documents.

98.     Joseph also misappropriated Genesis Group's trade secrets within the meaning of Tex. Civ. Prac. & Rem.§ 134A.002(3) by emailing approximately 150 emails from his work email address to his personal email address mere months before his termination and retaining such emails following his termination.

99.     Joseph also misappropriated Genesis Group's trade secrets within the meaning of Tex. Civ. Prac. & Rem.§ 134A.002(3) by retaining post-termination at least three separate devices that contain, on information and belief, large repositories of Genesis Group data, all of which he has never returned.

100.    Joseph's misappropriation of Genesis Group's trade secrets is continuing and ongoing, and Genesis Group will suffer irreparable harm if Joseph's misconduct is not enjoined.

101.    As a result of Joseph's misappropriation of trade secrets, Genesis Group will suffer actual losses in an amount to be determined at trial.

102.    Joseph's misappropriation of Genesis Group's trade secrets entitles Genesis Group to immediate injunctive relief and damages, pursuant to Tex. Civ. Prac. & Rem.§ 134A.003(c).

103.    At all material times, Joseph acted willfully, maliciously, and in bad faith.

104.    As a result of Joseph's misappropriation, Genesis Group will suffer irreparable harm.

## COUNT 6
**Breach of Fiduciary Duty**

105.    Genesis Group incorporates Paragraphs 1 through 104 as if fully stated herein.

106.    As Chief Intellectual Property Officer for Genesis Coin, Joseph owed a fiduciary duty to Genesis Coin and its affiliates.

107.    In connection was his fiduciary duties, Joseph owed Genesis Coin and its affiliates a duty to avoid acting contrary to Genesis Coin's interests.

108.    Joseph also owed Genesis Coin and its affiliates a duty not to divulge, disclose, expose, or misuse Genesis Group's proprietary information.

109.    Joseph also owed a fiduciary duty of loyalty to Genesis Coin and its affiliates.

110.    Nonetheless, Joseph breached his fiduciary duties to Genesis Coin by treating his employer's IP forms as his own, using information obtained through his employment with Genesis Coin to effectuate personal ambitions through the filing of personal patents that involved Genesis Coin's business and/or used Genesis Coin's information, and other injurious conduct.

111.    Joseph also breached his fiduciary duty by divulging Genesis Group's proprietary information contained in Genesis Group's Google Drive folder to unauthorized individuals without Genesis Coin's consent.

112.    Further, Joseph breached his fiduciary duty by misusing Genesis Group's proprietary information by emailing of approximately 150 emails to his personal email address mere months before his termination.

113.    Further, Joseph breached his fiduciary duty by engaging in numerous other business endeavors without disclosing them to Genesis Coin or considering the interests of Genesis Coin

and by spending Genesis working time and using Genesis property to advance his own personal interests.

114.    As a direct and proximate result of Joseph's willful breach of his fiduciary duties to Genesis Coin, Genesis Group has suffered and will continue to suffer damages.  The damages are considerable and continuing and thus not fully capable of ascertainment at this time.  Genesis Group has suffered damages in an amount to be determined at trial.

## COUNT 7
### Conversion

115.    Genesis Group incorporates Paragraphs 1 through 114 as if fully stated herein.

116.    Having purchased them for company use, Genesis Coin owns and is entitled to possession of the work computer, and any other company property currently in Joseph's possession.

117.    Following Joseph's refusal to return company property, Joseph unlawfully, and against Genesis Coin's five express requests to return, assumed and exercised dominion and control over the aforementioned property to the exclusion of, and inconsistent with, Genesis Coin's rights as the owner.

118.    As a direct and proximate result of Joseph's conversion of Genesis Coin's property, Genesis Coin has suffered and will continue to suffer damages in the amount of the value of converted property, the value of the information contained therein, and the value of continued wear and tear from further use following Joseph's termination.

## COUNT 8
### Unjust Enrichment

119.    Genesis Group incorporates Paragraphs 1 through 118 as if fully stated herein.

120.    Genesis Coin entrusted Joseph with Genesis Group's most valuable secrets and entered an employment relationship with Joseph with the express understanding that Joseph would evaluate Genesis Group's "existing portfolio of products to determine and execute on intellectual property opportunities."

121.    Rather than executing on intellectual property opportunities on behalf of Genesis Coin, Joseph improperly used his position as Chief Intellectual Property Officer to gain an undue personal advantage in filing personal patents.

122.    These personal patents involved Genesis Group's business and wrongfully secures a benefit to Joseph that would be unconscionable to retain because allowing Joseph to retain the patents would undermine a party's right to contract and employers' assurances that they can retain employees without fear of intellectual property theft.

**COUNT 9**
**Declaratory Judgment of Ownership of U.S. Pat. No. 11,250,112**

123.    Genesis Group incorporates Paragraphs 1 through 122 as if fully stated herein.

124.    As a result of Joseph's improper actions, there is a substantial and continuing justiciable controversy between Genesis Group and Joseph concerning ownership of U.S. Pat. No. 11,250,112 (including any patents, U.S. or foreign, deriving from the patent and/or Genesis Coin's intellectual property).

125.    Pursuant to 28 U.S.C. § 2201 *et seq.*, Genesis Group seeks a declaratory judgment that they own U.S. Pat. No. 11,250,112, as well as any patent applications and/or patents, U.S. or foreign, deriving from the U.S. Pat. No. 11,250,112 and/or Joseph's improper possession of Genesis Group's intellectual property.

126.    Upon information and belief, Joseph used Genesis Group's intellectual property as the basis of U.S. Pat. No. 11,250,112 and has listed himself as the sole owner and inventor.

127.    Upon information and belief, as a result of Joseph's improper actions in filing and prosecuting U.S. Pat. No. 11,250,112, based in whole or in part on Genesis Group's intellectual property obtained by Joseph during the course of his employment with Genesis Coin, whether negligently, intentionally, erroneously, or without deceptive intent, and pursuant to his obligations under his Employment Agreement, Genesis Group is the rightful owner of all patentable subject matter disclosed and/or claimed therein, pursuant to the Patent Laws of the United States and Texas law.

128.    By reason of Joseph's improper actions, Genesis Group has been and will continue to be irreparably harmed if Joseph is permitted to continue to own and control U.S. Pat. No. 11,250,112.  Genesis Group should be allowed to own and control such patent as the true and rightful owners of U.S. Pat. No. 11,250,112.

129.    As such, Genesis Group seeks a declaration and order that Joseph assign to Genesis Group all rights in and to U.S. Pat. No. 11,250,112, as well as any foreign patents issuing from or deriving from U.S. Pat. No. 11,250,112 and/or Genesis Group's intellectual property.

130.    In the alternative, Genesis Group seeks a declaration and order that the United States Patent Trade Office render the patent invalid.

131.    As a result of Joseph's actions, Genesis Group has been irreparably harmed and damaged and will continue to be unless Joseph is enjoined by the Court.

132.    Genesis Group has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Genesis Group respectfully requests judgment against Shawn Joseph and the following relief:

a) That this Court temporarily, preliminarily, and permanently enjoin Joseph from taking any action that violates the provisions of his Employment Agreement, including the provisions related to the treatment of Confidential Information;

b) That this Court temporarily, preliminarily, and permanently enjoin Joseph from business activities that use, develop, source or market any programs, products, services, or patents that incorporate, use, or rely upon Genesis Group trade secrets;

c) That this Court issue an Order requiring Joseph to return Genesis Group's property, tangible and intangible, including all property constituting or containing Genesis Group's trade secrets that are in Joseph's possession, custody, or control;

d) That this Court issue a Declaration and Order requiring Joseph to assign to Genesis Group all rights in and to U.S. Pat. No. 11,250,112 and any patents, U.S. or foreign, issuing from or deriving from U.S. Pat. No. 11,250,112 and/or Genesis Group's intellectual property;

e) That this Court issue an Order which equitably enjoins Joseph, for a period of no less than five (5) years, from filing any claims against Genesis Group, its employees, agents, customers, related entities, affiliates, or business partners, arising out of or related to any patent, trade secret or other intellectual property related to Genesis Group's business.

f) That Genesis Coin be awarded all compensatory, actual, consequential, exemplary, and punitive damages to which it is entitled under the law, which includes, but is not limited to equitable disgorgement of all of Shawn Joseph's income, revenue or benefit earned from Genesis Group while in breach of his fiduciary duties, the costs of the company property that Joseph has taken from Genesis Group, and also including all pre- and/or post-judgment interest on any award;

g) That Genesis Coin be awarded the costs of bringing this action, including all court costs and attorneys' fees; and

h) Such other relief as this Court deems just and appropriate.

## **Jury Demand**

Genesis Group demands a trial by jury.

Respectfully submitted,

**JACKSON WALKER LLP**

By:      /s/ *Scott W. Weatherford*
Scott W. Weatherford
sweatherford@jw.com
State Bar No. 24079554
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2073 (Direct Dial)
(512) 391-2189 (Direct Facsimile)

&

**HOLLAND & HART LLP**

Jeremy B. Merkelson, *pro hac vice motion pending*
jbmerkelson@hollandhart.com
(202) 654-6919  (Direct Dial)
Michael J. O'Leary, *pro hac vice motion pending*
mjoleary@hollandhart.com
(202) 654-6922 (Direct Dial)
901 K Street NW, Suite 850
Washington, DC 20001
(202) 280-1041 (Direct Facsimile)

*Counsel for Defendants/ Counterclaimants*

## CERTIFICATE OF SERVICE

This is to certify that on the 23rd day of June 2022, a true and correct copy of the foregoing document has been electronically forwarded to the following:

Marcus L. Fifer (marcus@fifer.law)
Marcus L Fifer Law Firm, PLLC
P.O. Box 6501
Austin, TX 78762

Nilay U. Vora (nvora@voralaw.com)
Jeffrey A. Atteberry (jatteberry@voralaw.com)
William M. Odom (will@voralaw.com)
THE VORA LAW FIRM, P.C.
201 Santa Monica Blvd., Ste. 300
Santa Monica, CA 90401

*Attorneys for Plaintiff/Counterclaim Defendant*


/s/ *Scott W. Weatherford*
Scott W. Weatherford


19033722_v8