# EXHIBIT 1

## EMPLOYMENT AGREEMENT

This Employment Agreement (the "Agreement") is made and entered into from November 1, 2019, the Effective Date, executed herein, by and between Genesis Coin, Inc. (the "Company"), a Delaware C-Corp, and Shawn Joseph, a Texas resident.

### RECITALS:

A. The Company is a crypto currency transaction software platform developer and distributor of kiosks, which runs the Genesis software platform exclusively.

B. The Employee has expertise and knowledge in examining intellectual property and is a technological generalist with a broad depth of knowledge spanning the spectrum of software development, cloud computing platforms, and computer hardware.

C. The Company desires to retain the services of the Employee in order to assist the Company in the analysis, development and implementation of the Company's intellectual property strategy as "CIPO", Chief Intellectual Property Officer.

D. The Employee is willing to provide services to the Company, upon the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the promises and agreements herein contained and intending to be legally bound, the parties agree as follows:

1. <u>Service of Employee</u>. The Company hereby hires the Employee to act and serve as CIPO for the Company pursuant to the terms and conditions of this Agreement and as may from time to time be directed by the Company.

2. <u>Duties.</u> Throughout the term of Employee's employment, the Employee shall assist the Company in creating and implementing the Company's intellectual property strategy, with particular emphasis on analyzing the Company's existing portfolio of products to determine and execute on intellectual property opportunities. The Employee shall report the results of his efforts to Evan Rose (hereinafter the "Founder") and Peter Sentowski (hereinafter the "President") or as may be otherwise directed by the Company from time to time, and shall consult with the Founder/President in determining specific objectives and direction of the Company's IP strategy. The Employee shall at all times perform his duties and discharge his responsibilities under this Agreement diligently and conscientiously, and to the best of his ability. The Employee shall not have the authority to contractually bind the Company at this time but would be called to do so upon execution of an offer letter and designation as an officer of the company.

3. <u>Term of Employment</u>.  The Term of Employee's employment shall commence November 1, 2019 (the "Effective Date"), and shall continue thereafter for a period of three (3) years, unless sooner terminated in accordance with the provisions of Section 4 below.  Thereafter, the term of Employee's employment shall be renewed for successive periods of one year each, unless (a) the Company or the Employee shall have given 30 days prior written notice of intent to terminate Employee's employment at the end of the then-current Term (references herein to the "Term" of Employee's employment shall include references to the initial and to any renewal or extended Terms of employment), or (b) Employee's employment is sooner terminated in accordance with the provisions of Section 4 below.

4. <u>Termination of Employment</u>.  Employee's employment hereunder shall terminate upon the first to occur of the following circumstances:

(a)  The expiration of the Term of Employee's employment pursuant to timely notice given in accordance with Section 3, above;

(b)  The death or total and permanent disability of the Employee (for this purpose, "disability" shall refer to a physical, mental or emotional condition that renders the Employee unable to perform his obligations as set forth in this Agreement for any significant period of time during the Term of Employee's employment);

(c)  The Company's election to terminate Employee's employment due to the material breach by the Employee of any of the Employee's covenants under this Agreement, including, but not limited to, those covenants set forth in Sections 7, 8 and 11 hereof; or

(d)  The Company's election to terminate Employee's employment for "Cause."  For purposes of this Agreement, "Cause" shall include, but shall not be limited to, dishonesty, negligence, fraud, embezzlement, habitual insobriety, conviction of a crime involving moral turpitude, willful destruction or misappropriation of Company property, or willful commission of an act materially injurious to the Company's business, or the Employee's failure to perform his responsibilities in a competent, professional manner, as determined by the Company's Board of Directors in the exercise of its sole discretion.

(e)  The passage of 30 days after either the Company's or Employee's delivery of written notice to the other of intention to terminate employment.

(f)  The Employee ceases to be a bonafide Texas resident.

5.  <u>Compensation of Employee; Expense Reimbursements; Benefits</u>.

(a) In consideration of the services to be provided by the Employee pursuant to this Agreement, the Company shall pay to the Employee, a base salary of $110,000 per year plus benefits identified in subsection (c) below. The Company will increase the base salary on an annual basis as agreed upon in the officers compensation agreement. In addition to the incentive compensation set forth above, Employee shall be eligible for a variable bonus compensation, equity and profit sharing detailed in Exhibit A, as well as performance-based compensation bonuses for any intellectual property issued to the company as a result of Employee's efforts.

(b) The Company will reimburse the Employee for approved travel and related expenses incurred by the Employee, when the Employee must travel away from the general area in which the Employee's office is located in Austin, Texas. Notwithstanding the foregoing, the Company shall reimburse the Employee for reasonable office expenses, travel expenses, lodging and meals while the Employee is traveling on the Company's business.

(c) In addition to the salary referred to above, the Company shall provide health, vision, dental and life insurance benefits to Employee and dependents, up to $350 per month, and a technology budget of $2,000 per year. Without limiting the foregoing, the Company shall grant to the Employee vacation that may be taken by employee at his discretion.

6. <u>Maintenance of Office</u>. The Employee will work remotely in Austin, Texas and does not need to maintain his office at the Company headquarters.

7. <u>Noncompetition</u>.

(a) The Employee shall not at any time during the Term of Employee's employment render any services, directly or indirectly for any Competitor.

(b) The Employee shall not, at any time during the Term of Employee's employment, directly or indirectly influence or attempt to influence, either directly or indirectly, any employee of the Company or any Employee to the Company or of any affiliated entity to leave or terminate such individual's employment or service with the Company or with any affiliate of the Company. In the event that any employee of the Company terminates his employment with the Company and undertakes employment, directly or indirectly with Employee, Employee's agents or employers within six (6) months of the termination of Employee's employment hereunder, Employee shall be presumed to have violated this section 8(b).

(c) For purposes of this Agreement, the term "Competitor" shall mean any individual (including the Employee) or entity that at any time is directly

or indirectly (for example, through an affiliated or controlled individual or entity) engaged in the development of crypto currency kiosk transaction software.

(d)   The Employee, unless directed by the Company, shall not at any time during the period of the Employee's employment with the Company directly or indirectly influence or attempt to influence, either directly or indirectly, any customer or client of the Company or of any affiliated entity to discontinue using the services of, or to cancel or fail to renew a contract with, the Company or an affiliate of the Company.

(e)   The Employee agrees and acknowledges that the breach by the Employee of any of the provisions of this Section will cause the Company irreparable damage, that the remedy at law for any such breach would be inadequate, and that the Company, in addition to any other relief available to it, shall be entitled to immediate temporary and permanent injunctive relief appropriately restraining Employee from committing or continuing such breach.

8.   <u>Confidential Information</u>.

(a)   The Employee shall never, unless directed by the Company, either during the period of the Employee's employment by the Company or thereafter, disclose to any other individual or entity any Confidential Information. The Employee acknowledges and agrees that all Confidential Information is proprietary to the Company, is extremely important to the Company's business, and that the disclosure of such Confidential Information to a Competitor could have a materially and adversely affect the Company, its business and its customers.

(b)   Upon any termination of the Employee's service with the Company, the Employee shall leave with or return immediately to the Company any and all records and any and all compositions, articles, devices and other similar or related items that disclose or contain any Confidential Information, including all copies or specimens thereof, whether in the Employee's possession or under the Employee's control, or whether prepared by the Employee or by others.

(c)   For purposes of this Section, the term "Company" shall refer to the Company and to any corporation or other entity that is owned or controlled, directly or indirectly, by Company or that is under common ownership or control with the Company.

(d)   For purposes of this Agreement, the term "Confidential Information" shall mean information in any form that is not generally known to the public that relates to the Company's past, present or future operations, processes, products or services, including without limitation information that relates to the Company's product designs or to the applications or uses of the same, or to any market research, customer

development, marketing, purchasing, accounting, maintenance, operations, engineering, merchandising, advertising, selling, leasing, financing or business methods or techniques (including without limitation customer lists, records of customer purchases and requirements, and like and similar information relating to actual or prospective customers) that is or may be related thereto including any future business the Company may engage in during the term of Employee's employment.  All information disclosed to the Employee or to which the Employee obtains access during any period of employment with the Company, whether pursuant to this Agreement or otherwise, or to which the Employee obtains access by reason of this Agreement or his service to the Company, that the Employee has a reasonable basis to believe is or may be Confidential Information, shall be presumed for purposes of this Agreement to be Confidential Information.

9. <u>Inventions</u>.

(a) Immediately upon its discovery or completion, the Employee shall promptly and fully disclose each Invention involving the Company's business in writing to the Company.  The Employee shall make this disclosure regardless of whether an Invention is discovered, conceived or completed by the Employee alone or jointly with others.

(b) The Employee hereby assigns, and agrees to assign, to the Company, or nominee, all of the Employee's rights in and to all Inventions and in and to any and all letters patent or copyrights or applications therefor at any time granted or made, whether in the United States of America or in any foreign nation, upon or with respect to any Invention involving the Company's business discovered while executing on Company's objectives.

(c) The Employee shall from time to time execute, acknowledge and deliver promptly to the Company (without charge to the Company but at the expense of the Company) such written instruments and documents, and shall take such other and further action with respect to any Invention, as may be necessary or desirable in order to enable the Company to obtain and maintain patents and/or copyrights therein, or to vest the entire right title and interest thereto in the Company.

(d) The Company shall not assert any rights under any Inventions as having been made or acquired by the Employee prior to the commencement of the Employee's service with the Company.

(e) For purposes of this Agreement, the term "Inventions" means discoveries, developments, improvements and ideas (whether or not shown or described in writing or reduced to practice) and works of authorship (including computer software), whether or not patentable or copyrightable, (i) that relate directly to the kiosk, digital signage point of sale equipment, cash handling equipment, and point of interaction

5

equipment business; (ii) that relate to the Company's actual or demonstrably anticipated research or development with respect to the any of the foregoing; (iii) that result from any services at any time performed by the Employee for the Company, whether pursuant to this Agreement or otherwise; (iv) for which equipment, supplies, facilities or trade secret information of the Company is used; or (v) that are developed in pursuance of the Employee's service to the Company pursuant to this Agreement.

10. <u>Assignment</u>. The Company may assign its rights and may delegate its duties under this Agreement to a purchaser of all or any substantial portion of the assets of the Company, and upon such assignment and assumption by the assignee of the terms of this Agreement, the Company shall be relieved all further obligation hereunder.

11. <u>Compliance with Law and Regulation; Noncontravention</u>. The Employee shall comply with all laws, rules, regulations of any governmental or regulatory body having jurisdiction of any phase of the services performed hereunder. The Employee shall indemnify, defend, and save the Company and its affiliates harmless from and against all claims, damages and liability which may result from the Employee's failure to comply with this Section. The Employee represents and warrants that the execution of this Agreement, performance of the services described herein and compliance by the Employee with the provisions of this Agreement will not result in any breach of any of the terms, conditions, or provisions of, or constitute a default under, any indenture, agreement, or other instrument to which the Employee is a party or by which the Employee may be bound; nor will any such action result in any violation of any provision of any applicable law, judgment, order, rule, or regulation of any court or governmental authority.

12. <u>Governing Law.</u> This Agreement shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of Texas, without regard to its choice of law rules.

13. <u>Entire Understanding.</u> This Agreement constitutes the entire understanding and agreement between the Company and the Employee with regard to all matters herein, and there are no other agreements, conditions, or representations, oral or written, expressed or implied, with regard thereto other than as referred to herein. This Agreement may be amended only in writing, signed by both parties hereto.

14. <u>Severability.</u> If any term or provision of this Agreement shall be held to be invalid or unenforceable for any reason, such term or provision shall be ineffective only to the extent of such invalidity or unenforceability without invalidating the remaining terms and provisions hereof, and this Agreement shall be construed as if such invalid or unenforceable term or provision has not been contained herein.

15. <u>Consent to Jurisdiction</u>. The Employee agrees that any action or proceeding to enforce, or that arises out of, this Agreement may be commenced and maintained in the district courts of the United States.

16. <u>Attorneys' Fees.</u> In the event that this Agreement is breached by either party, the breaching party shall be liable for all costs and attorneys' fees incurred by the non-breaching party as a result of the breach or in enforcing the terms of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

"Company"

Genesis Coin, Inc. a Delaware C-Corp

By: *Evan Rose*
D103DBA46C11433...
Evan Rose
Title: Founder
Date:

"Employee"

By: *Shawn Joseph*
F560CC910556458...
Shawn Joseph
Title: Chief Intellectual Property Officer
Date:

7

Exhibit "A"
Bonus compensation, Equity and Profit Sharing

A variable bonus tied to company EBITDA will be paid annually as cash bonuses to all employees. An officer profit sharing plan, which could include equity and or additional cash equivalent incentives, will be memorialized in an amendment to this Agreement.

A performance-based compensation bonus will be issued to Employee at the discretion of Founder/President for any intellectual property issued to Company as a result of the CIPO's efforts while employed by the Company.