**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| SHAWN JOSEPH, | § | |
| | § | |
| *Plaintiff/Counterclaim Defendant,* | § | CIVIL CASE NO. 1:22-CV-615-JRN |
| | § | |
| vs. | § | |
| | § | |
| GENESIS COIN, INC.; GENESIS SERVICES | § | |
| INC.; AQUARIUS MANAGEMENT CORP.; | § | |
| AND EVAN ROSE, | § | |
| | § | |
| *Defendants/Counterclaim Plaintiff.* | § | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF SHAWN JOSEPH'S MOTION TO
REMAND TO STATE COURT OR IN THE ALTERNATIVE FOR LEAVE TO TAKE
EXPEDITED JURISDICTIONAL DISCOVERY**

## TABLE OF CONTENTS

**Page**

Table of Authorities ....................................................................................................... ii

I.  RELEVANT BACKGROUND ...................................................................................2

II. ARGUMENT ............................................................................................................4

    A.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. ...........4

        1.  None of the Genesis Group companies have a "nerve center" in Texas. .........5

        2.  Plaintiff's purported evidence in support of its motion for remand does not
        make Texas Genesis Coin's principal place of business, for jurisdictional purposes. ..........7

    B.  Jurisdictional discovery is not necessary............................................................10

III.    CONCLUSION ...................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Balachander v. AET Inc.*,
   No. H-10-4805, 2011 U.S. Dist. LEXIS 109787 (S.D. Tex. Sep. 27, 2011) ............................9

*Coury v. Prot*,
   85 F.3d 244 (5th Cir. 1996) .................................................................................................4

*Crews v. FAE, LLC*,
   No. 6:18-cv-01647, 2019 U.S. Dist. LEXIS 62283, 2019 WL 2413509 (W.D. La.
   Mar. 19, 2019).....................................................................................................................8

*Dart Cherokee Basin Operating Co. v. Owens*,
   574 U.S. 81 (2014)..............................................................................................................4

*Delay v. Household Fin. Corp.*,
   No. A-14-CA-064-SS, 2014 U.S. Dist. LEXIS 36901 (W.D. Tex. Mar. 20, 2014) .................8

*Edmondson v. Cedar Park Health Sys.*,
   L.P., No. 1:17-CV-1030-LY, 2018 U.S. Dist. LEXIS 172313 (W.D. Tex. June 8,
   2018) .................................................................................................................................10

*Good River Farms L.P. v. TXI Operations, L.P.*,
   No. 1:17-CV-1117, 2018 U.S. Dist. LEXIS 61817 (W.D. Tex. April 12, 2018) ....................4

*Grant v. Crst Expedited*,
   No. 1:18-CV-433, 2019 U.S. Dist. LEXIS 238240 (E.D. Tex. Feb. 1, 2019) ...........................4

*Guitar Holding Co., L.P. v. El Paso Nat. Gas Co.*,
   No. EP-10-CV-214-KC, 2010 U.S. Dist. LEXIS 85817 (W.D. Tex. Aug. 18, 2010)...........5, 8

*Hertz Corp. v Friend*,
   559 U.S. 77 (2010)........................................................................................................1, 4, 8

*Tran v. Tran*,
   No. A-17-CV-510 LY, 2017 U.S. Dist. LEXIS 218697 (W.D. Tex. Aug. 25, 2017) ..............6

*Vaquero Permian Processing LLC v. Mieco LLC*,
   No. PE:21-CV-00050-DC-DF, 2022 U.S. Dist. LEXIS 8307 (W.D. Tex. Jan. 18,
   2022) .................................................................................................................................10

## STATUTES

28 U.S.C. § 1332...................................................................................................................2, 4

28 U.S.C. § 1332(c)(1)...............................................................................................................4

Shawn Joseph ("Joseph"), allegedly a Texas resident, filed the Original Petition (the "Petition") based on Rose's decision to terminate him, casting this dispute as one directly between Joseph and Rose, a resident of Puerto Rico, and what Joseph alleges are Rose's "alter ego[]" entities, two Delaware corporations, Genesis Services, Inc. ("Genesis Services") and Genesis Coin, Inc. ("Genesis Coin"), and Aquarius Management Corp. ("Aquarius"), a Puerto Rico corporation (collectively, the "Genesis Group").  *See* Petition at ¶ 24.  Now, preferring to litigate in Texas state court, Joseph argues the principal place of business of Genesis Coin—the entity that once employed Joseph—is in Texas even though at the time of removal, there is not a *single* individual employed by the Genesis Group still living, working, or otherwise engaging in *any activities* on behalf of the entities *anywhere* in Texas.

Joseph's focus on whether Genesis has done business in Texas or listed a Texas address on a corporate document in the past is misplaced and misapprehends the governing legal standards. A corporation's "principal place of business" for purposes of the federal diversity statute "refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v Friend*, 559 U.S. 77, 80 (2010).  "[T]he fact that the word 'place' follows the words 'State where'" in the diversity statute "means that the 'place' is a place *within* a State.  It is not the State itself." *Id*. at 83 (emphasis in original).  It is the physical location where natural persons "direct, control, and coordinate the corporation's activities."

When Joseph filed his Petition and when Defendants filed their Notice of Removal—the only relevant times for purposes of evaluating diversity jurisdiction—there were no officers, no employees, no offices, no corporate records, no meetings, and no Genesis Group decisions being made in Texas.  Thus, Texas cannot be the "principal place of business" under binding Supreme Court precedent.  For purposes of federal diversity jurisdiction, Genesis Coin and Genesis Services

are citizens of Delaware, where they are incorporated and Puerto Rico, where Rose directs, controls, and coordinates activities through Aquarius. There is complete diversity of citizenship of the parties and this Court may properly exercise subject matter jurisdiction.[1]

## I.    RELEVANT BACKGROUND

Rose founded and is the sole shareholder of the Genesis Group.[2]  **Exhibit 1**, July 29, 2022 Declaration of Evan Rose ("Rose Dec."),¶ 3. The Genesis Group sells virtual currency ATMs and licenses proprietary software to operate them. *Id*., ¶ 7. Since February 2017, Rose has lived in San Juan, Puerto Rico, where he manages and develops the software platform installed in the virtual currency ATMs and makes high-level and strategic decisions for the Genesis Group through Aquarius. *Id*.¶¶ 1–6. Prior to moving to Puerto Rico in February 2017, Rose managed the Genesis Group from a leased studio apartment and a "co-working" space in Austin, Texas. *Id*. ¶ 9.

Within the Genesis Group, Genesis Coin is the U.S. "brand" that contracts with "owner-operators" to sell virtual currency ATMs powered by the software developed by Rose. *Id*., ¶¶ 6–8. Sentowski, the single employee of Genesis Services, is the President of Genesis Coin and Genesis Services. He manages day to day operations of both. **Exhibit 2**, Declaration of Peter Sentowski ("Sentowski Dec."), ¶¶ 3–4. Sentowski has never lived or been employed in Texas and he has not attended a Genesis Coin meeting in Texas since at least 2017.[3] *Id*., ¶¶ 2, 11. Sentowski consults with Rose on high-level business decisions. *Id*., ¶ 7. Genesis Coin previously employed Joseph, who worked in Texas as its Chief Intellectual Property Officer.[4] *Id*., ¶ 5. Since March

---

[1] It is not disputed that the amount in controversy threshold under 28 U.S.C. § 1332 is satisfied.

[2] Attached as **Exhibit 3** is a demonstrative exhibit depicting the structure of the Genesis Group.

[3] Joseph asserts that "[a]ccording to a LinkedIn profile" Sentowski "remained in Texas." Joseph is certainly aware Sentowski did not live or work from Texas. *See generally* Sentowski Dec.

[4] Joseph falsely asserts he was Rose's "business partner". [Doc. 23 at 5]. He was an employee of Genesis Coin and directed by Rose and Sentowski. Sentowski Dec., ¶ 5; Rose Dec., ¶ 14–15.

2022, when Joseph's employment ended, the Genesis Group has not employed anyone in Texas. *Id*., ¶ 6.

Aquarius, a Puerto Rico company, is solely managed by Rose.  Rose Dec., ¶ 7.  Rose, as the Aquarius CEO, has developed proprietary processing software to operate virtual currency ATM machines.  *Id*.  Genesis Coin enters into licensing agreements with owner-operators of virtual ATMs to sell the kiosks and license the software to power those kiosks.  *Id*., 6–7.  Rose, through Aquarius, manages the software platform.  *Id*., ¶ 7.  Aquarius provides a variety of services[5] to customers outside of Puerto Rico through Genesis Coin, its U.S. affiliate, as well as directly to third parties outside of Puerto Rico.  *Id.*, ¶ 8.  Services provided through Genesis Coin are for the benefit of owner-operators outside of Puerto Rico who contract with Genesis Coin to purchase virtual currency ATMs.  *Id.*, ¶ 8.  As the sole shareholder and only officer of Aquarius, it is Rose who directs, controls, and coordinates the provision of these services through Genesis Coin and directly to unaffiliated third parties.  *Id*., ¶ 8.  Without Rose, there is no service, no product and no Genesis Group.  Joseph's own allegations assert that  Rose "uses Genesis [Coin], Genesis Services and Aquarius as alter egos of himself for the purposes of certain relevant transactions."  Petition, ¶ 24.

At all times since this lawsuit was filed, Genesis Group has had only two officers: Sentowski in New Jersey and Rose in Puerto Rico.  Rose Dec., ¶ 13.  Thus, all the decision-making authority for the Genesis Group lies in only those two locations; not in Texas, where there is no one.  To the extent there were any basis to dispute the location of the principal place of business of Genesis Coin or Genesis Services for federal diversity purposes, the candidates would be either

---

[5] These include services relating to advertising and public relations, consulting, professional services, centralized managements service, and the development of computer programs. Rose Dec., ¶ 8.

New Jersey or Puerto Rico; not Texas.  There is no brick and mortar Genesis Group office in Texas, no active bank accounts based in Texas and the corporate records of Genesis Group are not stored in Texas.  Rose Dec., ¶¶ 16–17, ; Sentowski Dec., ¶¶ 8–9.  Since Rose moved from Texas, more than five years ago, Genesis Coin has not held any corporate meetings in Texas.  Sentowski Dec., ¶ 11; Rose Dec., ¶ 17.  Indeed, at the time of the Petition and at the time of removal, Genesis Coin's connection to Texas is virtually non-existent.

## II.   ARGUMENT

**A.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.**

Diversity of citizenship is evaluated at "the time of ***filing in state court*** and at ***the time of removal to federal court***."  *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996) (citation omitted) (emphasis added).  Evidence establishing diversity jurisdiction is mandated only when the plaintiff contests, or the court questions, the defendant's allegations in its "short and plain statement of the grounds for removal" filed in the notice of removal.  *Grant v. Crst Expedited*, No. 1:18-CV-433, 2019 U.S. Dist. LEXIS 238240, at *5 (E.D. Tex. Feb. 1, 2019) (citing *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 86 (2014)).  For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and the State or foreign state where it has a principal place of business." 28 U.S.C. § 1332(c)(1).  The phrase "principal place of business" refers "to the place where a corporation's officers direct, control and coordinate the corporation's activities," or what is often referred to as the corporation's "nerve center."  *Hertz*, 559 U.S. at 92–93.  In adopting the "nerve center" approach, the Supreme Court rejected a then-existing alternative approach of considering the amount of business activity in a state and the significance of that business in favor of a simpler approach focused on the origin of the direction, control and coordination of the company.  *Id*. at 92–95; *see also Good River Farms L.P. v. TXI Operations, L.P.*, No. 1:17-CV-1117, 2018 U.S.

Dist. LEXIS 61817, *5 (W.D. Tex. April 12, 2018) (expressly rejecting the same argument presented by Joseph that the defendant's "revenues from its Texas operations are so substantial that its principal place of business lies in Texas").

The Court must determine whether any[6] of the Defendants are citizens of Texas. It is undisputed that Rose is a citizen of Puerto Rico for jurisdictional purposes. Rose Dec., ¶ 1. It also is undisputed that all of the entity Defendants were incorporated outside of Texas. *Id*., ¶¶ 4–5. Thus, the only question for the Court is whether any of the entity Defendants have a "nerve center" in Texas, a place where Defendants have no employees, no officers, no buildings, no corporate meetings since at least 2017, and where no decisions are made.

### 1.      None of the Genesis Group companies have a "nerve center" in Texas.

The principal place of business, for diversity purposes, is where significant corporate business and strategy decisions are made. *Guitar Holding Co., L.P. v. El Paso Nat. Gas Co*., No. EP-10-CV-214-KC, 2010 U.S. Dist. LEXIS 85817, at *16 (W.D. Tex. Aug. 18, 2010). Since this lawsuit was filed, **no** Genesis Group business or strategy decisions have been made in Texas. Rose Dec., ¶ 12. There are no facts that support a contrary conclusion.

Courts consider a number of factors to determine the location of the "nerve center," including the: (1) location of corporate and executive offices; (2) site where day-to-day control is exercised; (3) amount of managerial authority at the executive office; (4) location of corporate records and bank accounts; (5) location where the board of directors and stockholders meet; (6) location where executives live, have offices, and spend their time; (7) location where corporate income tax is filed; (8) location, designated in corporate charter; and (9) location where policy,

---

[6] Joseph contends that "***at least*** Genesis Coin" is a local defendant but does not assert facts connecting Aquarius or Genesis Services to Texas. [Dkt. 23 at 8] (emphasis added).

advertising, distribution, accounts receivable departments and finance decisions originate." *Tran v. Tran*, No. A-17-CV-510 LY, 2017 U.S. Dist. LEXIS 218697, at *5 (W.D. Tex. Aug. 25, 2017). For each of the entity Defendants, the factors on a whole point to Puerto Rico, or possibly New Jersey for Genesis Coin and Genesis Services, but certainly not Texas.

**Factor 1 - Location of corporate offices.**    There are no Genesis Group corporate offices in Texas.  Joseph points to three Texas addresses listed on various forms as evidence that Texas is the "nerve center" for Genesis Coin.  None are Genesis Coin corporate offices.  Two of them (700 Lavaca St., Suite 1401 and 5900 Balcones Dr., Suite 100) are addresses of registered agents and the other is a "co-working" space in Austin (701 Brazos St., Suite 1616) where Rose historically worked but has not used since leaving Texas in 2017.  Rose Dec., ¶ 8.

**Factors 2, 3, 6 and 9 – Location of officers, authority and decisions.**    The managerial authority for the Genesis Group lies primarily in Puerto Rico with Rose who makes the ultimate decisions related to company strategy and direction.  Rose does this in his capacity as CEO of Aquarius, which provides management services to Genesis Coin.  *Id.*, ¶ 7.  On the one hand, Joseph argues that the Genesis Group is an alter ego of Rose (Pet., ¶ 24); on the other hand, Joseph asserts that the principal place of business of the companies cannot simply track Rose's location [Doc. 23 at 5].  These positions are contradictory but, more importantly, Joseph's assertion that Texas is the "nerve center" of Genesis Coin is irreconcilable with the fact that after Joseph's termination in March 2022—and before he filed the current action—there were no natural persons affiliated with Genesis Coin anywhere in Texas.

Rose *is* the "nerve center" of Genesis Group.  As CEO of Aquarius, Rose makes all high-level, strategic decisions for the companies; he directs, controls and coordinates the Genesis Group's activities.  Joseph acknowledges this in the allegations pled in this lawsuit, alleging that

"Rose offered Mr. Joseph a job at Genesis [Coin]" (Pet., ¶ 25), that Rose "designed" the Employment Agreement signed by Joseph (Pet., ¶ 28), that Joseph took direction from Mr. Rose (Pet., ¶ 33) and that Rose made the decision to terminate Joseph's employment (Pet., ¶ 41).

Sentowski also has managerial authority over Genesis Coin.  Sentowski has day-to-day operational responsibilities, and he carries these out from New Jersey where he has lived for more than two decades.  Sentowski Dec., ¶¶ 1–4.  Sentowski makes decisions related to finances, customers, business opportunities and the development of the company.  *Id.*, ¶ 3–4.  He also managed and supervised Joseph.  *Id.*  In fact, Joseph's claim for retaliation in this lawsuit is entirely based on the complaint he lodged with Rose about the level of Sentowski's authority over and the decisions he made on behalf of the company.  Rose Dec., ¶ 15.

**Factor 4 – Location of bank accounts and corporate records.**  No Genesis Group entities hold bank accounts in Texas.  Rose Dec., ¶ 16.  Genesis Coin's corporate records are stored electronically and are accessed by Sentowski and Rose outside of Texas.  *Id*., ¶ 17.

**Factor 5 - Location of corporate meetings**.  Since Rose moved to Puerto Rico, there have been no Genesis Group meetings held in Texas. *Id*., ¶ 18. Joseph met with Rose in Puerto Rico to discuss intellectual property strategy and other aspects of Joseph's employment. *Id*. Sentowski and Rose typically meet virtually to discuss business strategies and decisions.  *Id*.  The two have held business meetings in Puerto Rico and New York, but never in Texas.  *Id*.; Sentowski Dec., ¶ 11.

**2.     Plaintiff's purported evidence in support of its motion for remand does not make Texas Genesis Coin's principal place of business, for jurisdictional purposes.**

Joseph relies upon Genesis Coin documents — historic corporate registrations, a 2021 tax filing, and a LinkedIn page —that do not suggest or demonstrate that Texas was the "nerve center" of Genesis Coin at the time this case was filed or at the time Defendants filed their notice of removal.  The simple fact that Genesis Coin has done business in Texas is irrelevant to the analysis.

And whether or not Texas could have been considered Genesis Coin's principal place of business at some point in the past (*e.g.*, when Evan Rose lived in Austin) is similarly immaterial.  All that matters at this stage is that at the time Joseph filed this action in May 2022 (and since), no officer or employee of Genesis Coin lives, works, or otherwise engages in activities on behalf of the company in Texas.  Quite simply, under the governing Supreme Court standard, Texas *cannot* be the company's principal place of business because there is no individual anywhere in the state to direct, control, or coordinate the company's activities.

In *Hertz*, the Supreme Court recognized that natural persons direct, control, and coordinate an entity's activities and rejected the suggestion that the "mere filing of a form" such as the Securities and Exchange Commission's Form 10-K listing a corporation's principal executive offices was dispositive as to the location of a company's nerve center.  559 U.S. at 97.  That is because citizenship necessarily lies where corporate officers live and make corporate decisions; not merely where forms or taxes are filed, or where a company is registered to do business.  *See Guitar Holding Co., L.P.,* LEXIS 85817, at *11 (location of corporate officers was evidence of the nerve center, not the location where tax filings were made).  Stated more simply, when determining where the "nerve center" is located, the actual location of overall control supersedes an address reflected on a regulatory or tax filing.  *Crews v. FAE, LLC*, No. 6:18-cv-01647, 2019 U.S. Dist. LEXIS 62283, at *13, 2019 WL 2413509  (W.D. La. Mar. 19, 2019) (statement on company's website that its headquarters was in Louisiana was not determinative of citizenship and was superseded by affidavits that corporate decision-making occurred in Colorado since "plaintiff offered no evidence to support that contention or refuting the facts set forth in the affidavits."); *Delay v. Household Fin. Corp*., No. A-14-CA-064-SS, 2014 U.S. Dist. LEXIS 36901, at *4 (W.D. Tex. Mar. 20, 2014) (mailing address and registered office in Dallas was insufficient to establish

Texas citizenship); *Balachander v. AET Inc*., No. H-10-4805, 2011 U.S. Dist. LEXIS 109787, at **11, 23–31 (S.D. Tex. Sep. 27, 2011) (franchise tax report and registration statements listing principal office and principal place of business as Houston were "insufficient indicators of a corporation's nerve center").

In an effort to confuse the legal issues, Joseph devotes a substantial portion of his Motion discussing Aquarius' Grant of Tax Exemption from the Government of Puerto Rico pursuant to Act No. 202012 ("Act 20").  Of course, the Puerto Rican's government's standards for granting corporate tax exemptions under Act 20 are irrelevant to the legal standards set by the U.S. Supreme Court for analyzing corporate citizenship under the federal diversity statute.  Although the intricacies of Puerto Rican tax law are very far afield from Joseph's request for remand, Defendants wish to highlight that Aquarius' Act 20 decree is not premised in any way upon Genesis Coin having a "principal place of business" *in Texas*.  Instead, the dispositive issue is simply whether Aquarius is exporting eligible services to *entities and individuals outside of Puerto Rico*.  Although that could include third parties or customers in Texas, it similarly applies to third parties or customers located in any U.S. state or foreign country.

Aquarius' Application for Act 20 discloses services that it planned to export outside of Puerto Rico both to Genesis Coin—which is clearly identified as an affiliate of Aquarius—and at least ten other unaffiliated third parties.  These services include Act 20: (1) "Advertising & public relations"; (2) "Consulting and Advising"; (3) "Professional Services"; (4) "Centralized management services"; and (5) "Development of computer programs."  Rose Dec., ¶ 19.  And Aquarius has exported the identified services both directly to unaffiliated third parties and through Genesis Coin.  Critically, all of the services provided by Aquarius are received by entities and individuals outside of Puerto Rico.  *Id*., ¶ 8.  For example, in the case of the services exported to

Genesis Coin, all such services are for the benefit of owner-operators based outside of Puerto Rico that have contracted with Genesis Coin to purchase virtual ATMs operating proprietary software. *Id*., ¶ 20.

**B.   Jurisdictional discovery is not necessary.**

The party seeking jurisdictional discovery bears the burden of showing its necessity. *Vaquero Permian Processing LLC v. Mieco LLC*, No. PE:21-CV-00050-DC-DF, 2022 U.S. Dist. LEXIS 8307, at *14 (W.D. Tex. Jan. 18, 2022).  Jurisdictional discovery "places an unnecessary burden on the parties" when the request is supported only by speculation.  *Edmondson v. Cedar Park Health Sys*., L.P., No. 1:17-CV-1030-LY, 2018 U.S. Dist. LEXIS 172313, at *10 (W.D. Tex. June 8, 2018).  Joseph has not articulated the discovery he needs to establish that the nerve center is located in Texas.  Indeed, as Genesis Coin's former single Texas employee, if there were facts to support the argument that Texas was the principal place of business at the time of removal, Joseph should already possess that information.  Defendant has provided the information the Court needs through the declarations of the only Genesis Group officers.

Discovery is not warranted.  However, to the extent Joseph's request for such discovery is granted, written discovery in the form of interrogatories and requests for product is sufficient to identify any relevant facts.  Defendants should also be permitted to pursue discovery of Joseph's knowledge related to Genesis Coin's connection (or lack thereof) to Texas as well as the facts relating to Joseph's own alleged citizenship given that he concedes he maintains residences in both Texas and Washington, D.C.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court has jurisdiction over this matter, removal was proper, and the Court should deny the Motion.

Respectfully submitted,

**JACKSON WALKER LLP**

By:    /s/ *Scott W. Weatherford*
Scott W. Weatherford
sweatherford@jw.com
State Bar No. 24079554
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2073 (Direct Dial)
(512) 391-2189 (Direct Facsimile)

&

**HOLLAND & HART LLP**

Jeremy B. Merkelson, *pro hac vice*
jbmerkelson@hollandhart.com
(202) 654-6919  (Direct Dial)
Michael J. O'Leary, *pro hac vice*
mjoleary@hollandhart.com
(202) 654-6922 (Direct Dial)
901 K Street NW, Suite 850
Washington, DC 20001
(202) 280-1041 (Direct Facsimile)

Brianne C. McClafferty, *pro hac vice*
bcmcclafferty@hollandhart.com
(406) 896-4642
401 N. 31st Street, Suite 1500
Billings, Montana 59101

*Counsel for Defendants/ Counterclaimants*

## CERTIFICATE OF SERVICE

On August 8, 2022, I hereby certify that I electronically submitted the foregoing document with the Clerk of Court using the CM/ECF system.  I hereby certify that I have also served the all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

Marcus L. Fifer (marcus@fifer.law)
MARCUS L FIFER LAW FIRM, PLLC
P.O. Box 6501
Austin, TX 78762

Nilay U. Vora (nvora@voralaw.com)
Jeffrey A. Atteberry (jatteberry@voralaw.com)
William M. Odom (will@voralaw.com)
THE VORA LAW FIRM, P.C.
201 Santa Monica Blvd., Ste. 300
Santa Monica, CA 90401

*Attorneys for Plaintiff/Counterclaim Defendant*

/s/ *Scott W. Weatherford*
Scott W. Weatherford