**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| SHAWN JOSEPH, § | |
| § | |
| *Plaintiff/Counterclaim Defendant,* § | CIVIL CASE NO. 1:22-CV-615-JRN |
| § | |
| vs. § | |
| § | |
| GENESIS COIN, INC.; GENESIS SERVICES § | |
| INC.; AQUARIUS MANAGEMENT CORP.; § | |
| AND EVAN ROSE, § | |
| § | |
| *Defendants/Counterclaim Plaintiff.* § | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF SHAWN JOSEPH'S MOTION FOR
ATTORNEYS' FEES AND COSTS PURSUANT TO 28 U.S.C. § 1447(c)**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.     LEGAL STANDARD ..............................................................................................................2

II.    ARGUMENT ..........................................................................................................................3

        A.    Defendants' Reliance on the Supreme Court's Standard in *Hertz* ..........................5

        B.    Defendants' Interpretation of the *Hertz* Standard Was Reasonable and Consistent with that Applied by Other Federal Courts ............................................7

        C.    Plaintiff Has Failed to Meet His Burden to Establish the Fees Requested Are Reasonable ......................................................................................................10

III.   CONCLUSION ....................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adams v. Abeo N. Am., Inc.*,
  No., 3:21-CV-72, 2022 U.S. Dist. LEXIS 53872 (M.D. Ga. Mar. 25, 2022)..........................10

*Baptiste v. Ritz-Carlton Hotel Co., L.L.C.*,
  No. 22-96, 2022 U.S. Dist. LEXIS 57898 (E.D. La. Mar. 30, 2022) ........................................3

*Bartlett v. Honeywell Int'l, Inc.*,
  737 F. App'x 543 (2d Cir. 2018) .........................................................................................7, 8

*Benchmark Invs., Inc. v. Pavmend, Inc.*,
  No. 20-cv-10888, 2021 U.S. Dist. LEXIS 241283 (S.D.N.Y. Dec. 16, 2021) ..............2, 6, 7, 8

*Cent. W. Va. Energy, Co. v. Mt. State Carbon, LLC*,
  636 F.3d 101 (4th Cir. 2011) ....................................................................................................9

*Colmenares v. Paedae, Inc.*,
  No. 21-5221-DMG, 2021 U.S. Dist. LEXIS 204308 (C.D. Cal. Oct 22, 2021)................2, 8, 9

*CostCommand LLC v. WH Administrators, Inc.*,
  820 F.3d 19 (D.C. 2016) .......................................................................................................2, 9

*Coury v. Prot*,
  85 F.3d 244 (5th Cir. 1996) ......................................................................................................4

*Dart Cherokee Basin Operating Co. v. Owens*,
  574 U.S. 81 (2014).....................................................................................................................5

*Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*,
  No. 3:09-CV-0752-D, 2011 U.S. Dist. LEXIS 13672 (N.D. Tex. Feb. 11, 2011) ..................11

*Grant v. Crst Expedited*,
  No. 1:18-CV-433, 2019 U.S. Dist. LEXIS 238240 (E.D. Tex. Feb. 1, 2019).............................5

*Hertz Corp. v Friend*,
  559 U.S. 77 (2010)............................................................................................................ *passim*

*Hoschar v. Appalachian Power Co.*,
  739 F.3d 163 (4th Cir. 2014) ....................................................................................................7

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ............................................................................................10, 11

*La. Power & Light Co. v. Kellstrom*,
  50 F.3d 319 (5th Cir. 1995) ....................................................................................................10

*Martin v. Franklin Capital Corp.*,
   546 U.S. 132 (2005) ...................................................................................................1, 3

*Menendez v. Timberblinds, LLC*,
   No. 4:21-CV-914, 2022 U.S. Dist. LEXIS 38893 (E.D. Tex. Mar. 4, 2022) ...........................3

*Montgomery-Bey v. S. Methodist Univ.*,
   No. 3:20-cv-3521-E-BN, 2021 U.S. Dist. LEXIS 191951 (N.D. Tex. Sep. 8, 2021)..............11

*Probasco v. Wal-Mart Stores Tex., L.L.C.*,
   766 F. App'x 34 (5th Cir. 2019) ..............................................................................................3

*Rubio v. Toro Co.*,
   No. EP-21-CV-00304-DCG, 2022 U.S. Dist. LEXIS 33160 (W.D. Tex. Feb. 25,
   2022) .......................................................................................................................................3

*Shepherd v. Dall. Cty.*,
   No. 3:05-CV-1442-D, 2009 U.S. Dist. LEXIS 30644 (N.D. Tex. Apr. 10, 2009) .................11

*Thomas v. S. Farm Bureau Life Ins. Co.*,
   751 F. App'x 538 (5th Cir. 2018) ............................................................................................2

*Vaquero Permian Processing, LLC v. Mieco, LLC*,
   No. P:21-CV-00050-DC, 2022 U.S. Dist. LEXIS 127348 (W.D. Tex. May 26, 2022) ......3, 10

*Watkins v. Fordice*,
   7 F.3d 453 (5th Cir. 1993) ..................................................................................................3, 10

### STATUTES

28 U.S.C. § 1332(c)(1) ....................................................................................................................4

28 U.S.C. § 1447(c) ...............................................................................................................1, 2, 3

### OTHER AUTHORITIES

13F Arthur R. Miller, Federal Practice and Procedure § 3625 n.26.90 (3d ed.) ............................7

Federal Rule of Civil Procedure 5(b)(2) .......................................................................................14

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id*. Although the Court granted Plaintiff Shawn Joseph's ("Joseph['s]") motion to remand this matter to state court, Defendants based their decision to seek removal upon an objectively reasonable interpretation of the Supreme Court's decision in *Hertz Corp. v Friend*, that Texas could not be the "principal place of business" of Delaware corporation Genesis Coin, Inc. ("Genesis Coin") for purposes of the federal diversity statute because it was undisputed that the company has no officers or employees living or working anywhere in Texas who could "direct, control, and coordinate the corporation's activities." 559 U.S. 77, 80 (2010).

In response, Plaintiff contended Texas was the principal place of business of Genesis Coin because: (1) it maintained an agent for service of process in the state; (2) the LinkedIn profile of a Genesis Group employee described the company as based in Texas; (3) it filed corporate tax returns in Texas and utilized an accountant in the state; and (4) Defendant Evan Rose ("Rose"), a Puerto Rico resident, obtained a tax incentive grant for a Puerto Rico entity in the Genesis Group, Aquarius Management Corporation ("Aquarius"), to provide services to markets outside of Puerto Rico. At the time this action was commenced, the Genesis Group had just two personnel, Rose and Peter Sentowski, who lived and worked in New Jersey. In response, Defendants contended that under the *Hertz* standard the facts they sought to rely upon did not impact or alter the propriety of removal, that the Genesis Group provided services rendered for markets outside of Puerto Rico as required by the Puerto Rico tax grant, and that the principal place of business of Genesis Coin is Puerto Rico, where Defendant Rose who founded, owns, and managed Genesis Coin was able to "direct, control, and coordinate" its activities as contemplated by the Supreme Court in *Hertz*.

This Court ultimately disagreed. Dkt. 32 at 4-5. Although Plaintiff prevailed on his motion to remand, Defendants' decision to seek removal was objectively reasonable. Other federal courts applying the *Hertz* standard have applied the exact same interpretation as Defendants. *See, e.g., CostCommand LLC v. WH Administrators, Inc.*, 820 F.3d 19, 24-25 (D.C. 2016) (applying *Hertz* to conclude corporation's principal place of business was Maryland rather than Texas even though Texas was where the company held "in-person, strategic meetings," filed taxes, kept corporate records and "where its primary counsel, accountants and bank account are located," because "[a]lthough some corporate activities occurred in Texas, [the company's founder] oversaw and controlled them from Maryland."); *Benchmark Invs., Inc. v. Pavmend, Inc.*, No. 20-cv-10888, 2021 U.S. Dist. LEXIS 241283, at *5-6 (S.D.N.Y. Dec. 16, 2021) (New York was nerve center of corporation with Georgia headquarters because highest level executives worked remotely from New York at time complaint filed); *Colmenares v. Paedae, Inc.*, No. 21-5221-DMG, 2021 U.S. Dist. LEXIS 204308, at *13 (C.D. Cal. Oct 22, 2021) (Ohio was nerve center even though corporation had officers working in California and filed documents with the California Secretary of State using a California address because the "Ohio office is home to a plurality of its officers with strategic, decision-making, and financial authority, and is the only single place home to more than one of them.").

Despite asserting that Defendants' decision to seek removal was objectively unreasonable, Joseph fails to cite the *Hertz* decision or the standard it articulated *a single time* in his motion let alone address why Defendants' reliance on that standard was not reasonable. Accordingly, an award of fees is unwarranted under these circumstances.

I.   **LEGAL STANDARD**

Courts have discretion to determine whether fees are appropriate under 28 U.S.C. § 1447(c). *Thomas v. S. Farm Bureau Life Ins. Co.*, 751 F. App'x 538, 539 (5th Cir. 2018).

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c), only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141 (2005). If a removing party could conclude "that its position was not an unreasonable one," fees should not be awarded on remand. *Probasco v. Wal-Mart Stores Tex., L.L.C.*, 766 F. App'x 34, 37 (5th Cir. 2019); *see also Menendez v. Timberblinds, LLC*, No. 4:21-CV-914, 2022 U.S. Dist. LEXIS 38893, at *34 (E.D. Tex. Mar. 4, 2022) (awarding no fees where applicable law was unclear and facts presented an objectively reasonable basis for removal); *Baptiste v. Ritz-Carlton Hotel Co., L.L.C.*, No. 22-96, 2022 U.S. Dist. LEXIS 57898, at *10 (E.D. La. Mar. 30, 2022) (denying fees even when defendant was incorrect on the law). This district has declined an award of fees even when there was a "weak" inference that removal was proper. *Rubio v. Toro Co.*, No. EP-21-CV-00304-DCG, 2022 U.S. Dist. LEXIS 33160, at *11 (W.D. Tex. Feb. 25, 2022). In making this determination, courts should balance the desire to deter removals, which can prolong resolution, while "not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Martin*, 546 U.S. at 140.

With respect to the amount of fees requested, a plaintiff bears the burden of establishing that the number of hours his attorneys expended are reasonable and adequately supported by time records. *Vaquero Permian Processing, LLC v. Mieco, LLC*, No. P:21-CV-00050-DC, 2022 U.S. Dist. LEXIS 127348, at *2 (W.D. Tex. May 26, 2022) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).

**II.     ARGUMENT**

This case is a dispute between two individuals, Joseph, a resident of Texas, and his former friend and employer, Rose, a resident of Puerto Rico. *See* Dkt. 1-3 at 2-4. Joseph was hired to work at Genesis Coin in November 2019 and terminated from his employment in March 2022. Joseph subsequently initiated this action in May 2022 in the District Court of Travis County against

Rose and three Rose-owned entities: Genesis Coin, Genesis Services, and Aquarius (collectively, the "Genesis Group"). *See* Dkt. 1-3. Joseph readily acknowledges that Genesis Group is Rose's operation, pleading in his Original Petition that Rose used the three Defendant entities as his alter egos. *Id.* at 7-8. Accordingly, Defendants removed this action premised on federal diversity jurisdiction.

Diversity of citizenship is evaluated at "the time of filing in state court and at the time of removal to federal court." *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996) (citation omitted). The federal diversity statute provides that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Plaintiff admitted in his Original Petition that Genesis Coin and Genesis Services are incorporated in Delaware and Aquarius is incorporated in Puerto Rico. Dkt 1-3 at 3. Thus, the only basis upon which Plaintiff could challenge federal diversity jurisdiction was to argue that Texas is Genesis Coin's "principal place of business."

In 2010, the Supreme Court determined that a corporation's "principal place of business" for purposes of determining diversity necessarily "refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz*, 559 U.S. at 80. In other words, the Supreme Court directed lower federal courts to identify the physical location where a company's officers direct, control, and coordinate corporate operations and strategy rather that locations where it may do significant business or engage in public facing activities.

With respect to this legal standard, Plaintiff acknowledged in his Original Petition that Rose "founded both Genesis [Coin] and Aquarius and acts as the CEO of Genesis [Coin] and President & CEO of Aquarius" and "founded and manages Genesis Services." *Id*. at 3-4. Thus, at the time this action was filed it was undisputed that: (1) Rose was a resident of Puerto Rico;

4

(2) Genesis Coin and Genesis Services were entities incorporated in Delaware that were founded and controlled by Rose; and (3) Aquarius was an entity incorporated in Puerto that also was founded and managed by Rose.  And there was no genuine factual dispute then or now that neither Genesis Coin nor any other Genesis Group entity had any officer or employees in Texas after Joseph's termination.  Dkt. 1-4 at 2-3; Dkt 29-1 at 4.  Accordingly, Defendants did not anticipate that Plaintiff would have any valid basis to oppose removal based on *Hertz*.[1]

### A.   Defendants' Reliance on the Supreme Court's Standard in *Hertz*

Defendants' decision to remove was objectively reasonable because, applying the *Hertz* standard, Genesis Coin cannot have its principal place of business in Texas, when no officer or director of Genesis Coin—or any entity in the Genesis Group—has resided or worked in Texas, to "direct, control, or coordinate" the company's activities since prior to the commencement of this action.  Because Rose exercises final decision-making authority over Genesis Coin, and it is undisputed he does so from Puerto Rico, it was reasonable to conclude that Rose is the natural person who directed, controlled, and coordinated Genesis Coin's activities.  As outlined above, Defendants' position was buttressed by Plaintiff's own allegations in his Original Petition including that Defendant Rose utilized Genesis Coin and the other Genesis Group entities as "alter egos of himself."  *See* Dkt 1-3 at 7-8.  But even if Defendants were incorrect that Puerto Rico was the "nerve center," as a matter of logic, some natural person must exercise the requisite degree of control over Genesis Coin.  The only other possible candidate is the only other employee of the

---

[1] Evidence establishing diversity jurisdiction is mandated only when the plaintiff contests, or the court questions, the defendant's allegations in its "short and plain statement of the grounds for removal" filed in the notice of removal.  *Grant v. Crst Expedited*, No. 1:18-CV-433, 2019 U.S. Dist. LEXIS 238240, at *5 (E.D. Tex. Feb. 1, 2019) (citing *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 86 (2014)).

Genesis Group, Peter Sentowski, who resides and works in New Jersey.  Given Rose's management role and final decision-making authority as to Genesis Coin as well as Plaintiff's assertion that Rose used Genesis Coin as his alter ego, Puerto Rico appeared to be the company's "nerve center" for purposes of the *Hertz* test.  But if not Puerto Rico, then the company's principal place of business must be New Jersey.  Based on the *Hertz* standard, Defendants reasonably concluded it cannot be Texas because no officers or employees of Genesis Coin reside or work there.

Plaintiff also relied on Aquarius' Grant of Tax Exemption from the Government of Puerto Rico pursuant to Act No. 202012 ("Act 20") to claim that Genesis Coin's principal place of business was Puerto Rico.  As outlined below, other federal courts applying the *Hertz* standard have recognized that statements in government filings regarding a corporation's headquarters are not dispositive of the legal determination of a corporation's principal place of business.  *See Benchmark Invs., Inc.*, 2021 U.S. Dist. LEXIS 241283, at *8 ("Similarly, Benchmark's references to the "'address that has appeared on [its] governmental filings'" is, without more, irrelevant") (citing *Hertz*, 559 U.S. at 97).  Similarly, the Puerto Rican's government's standards for granting corporate tax exemptions under Act 20 are not dispositive of the legal standards set by the U.S. Supreme Court for analyzing corporate citizenship under the federal diversity statute.  But, most importantly, as Defendants highlighted in their briefing on the motion to remand, Aquarius' Act 20 decree is not premised in any way upon Genesis Coin having a "principal place of business" in Texas.  Instead, the Puerto Rico authorities simply require that Aquarius is exporting eligible services to markets outside of Puerto Rico—which it is and which was not disputed in the briefing on remand.

### B. Defendants' Interpretation of the *Hertz* Standard Was Reasonable and Consistent with that Applied by Other Federal Courts

Defendants communicated their reliance on *Hertz* in connection with both their Notice of Removal and in response to the anticipated motion to remand. Defendants also specifically communicated their understanding that the absence of any natural persons associated with Genesis Coin in Texas was dispositive as a matter of law under *Hertz*. *See* Dkt. 35-3 at 2-3. The additional facts relied upon by Defendants in their motion to remand suggesting a Texas connection—*e.g.*, the use of a Texas address for Genesis Coin, the filing of Texas corporate tax returns, or the use of a Texas accountant—were neither new nor in dispute. Moreover, there was no dispute that Genesis Coin had previously had an employee working in Texas—Joseph—or that Rose had previously managed Genesis Coin from within the state. But at the time this action was commenced—which is the only time relevant for purposes of determining corporate citizenship—Rose was living and working in Puerto Rico and Genesis Coin did not have any officers or employees anywhere in Texas who could "direct, control, or coordinate" its activities. *Hertz*, 559 U.S. at 80.

This Court ultimately concluded Defendants had not met their burden to sustain removal and granted Plaintiff's motion to remand. But that decision does not mean that Defendants' interpretation of *Hertz* as applied to Rose's Puerto Rico operation was objectively unreasonable. Indeed, a number of other federal courts have endorsed the exact same interpretation of the *Hertz* standard utilized by Defendants in this case when facing similar facts.

"At core, a corporation's 'nerve center,' and thus its principal place of business for the purposes of diversity of citizenship, is where the lion's share of corporate decisionmaking and direction occurs at the time a lawsuit is initiated, not where corporate decisionmaking may have happened in the past or where it may happen in the future." *Benchmark Invs., Inc.*, 2021 U.S. Dist. LEXIS 241283, at *5-6 (S.D.N.Y. Dec. 16, 2021) (citing *Hoschar v. Appalachian Power Co.*, 739

7

F.3d 163, 171 (4th Cir. 2014) (looking to location of the "critical mass of controlling corporate officers"); *Bartlett v. Honeywell Int'l, Inc.*, 737 F. App'x 543, 547 (2d Cir. 2018) (citing 13F Arthur R. Miller, Federal Practice and Procedure § 3625 n.26.90 (3d ed.) (collecting cases)). Because, "the test focuses on where a corporation's 'high-level' decisions are made, not where day-to-day activities are managed . . . courts have found irrelevant the situs of things like 'strategic meetings,' 'tax filings,' and 'corporate records,' since what matters is the situs from where the corporation's high-level officers and directors 'overs[ee] and control[]' corporate activities." *Id*. (citing cases). For Genesis Coin, that location is clearly Puerto Rico.

In *Benchmark*, the district court concluded that even where the defendant corporation listed a Georgia address on its governmental filings and offered evidence that "[p]rior to the COVID-19 pandemic, [the company's] Georgia Headquarters have been the primary location for all staff meetings of [its] heads of corporate enterprise," New York was actually its principal place of business under the *Hertz* standard based on evidence that its "CEO has been 'work[ing] remotely from New York State' since 'the COVID-19 pandemic' started, with 'approximately 10 days a month spent in Benchmark's New York branch office.'"). *Id*. at *8-9. The Court specifically noted that the company's "argument about where its corporate decisionmaking may have occurred prior to when it commenced this action is irrelevant." *Id*. (citations omitted).

Similarly, in *Colmenares v. Paedae, Inc.*, the U.S. District Court for the Central District of California denied a plaintiff's motion to remand asserting that a corporate defendant's principal place of business was California rather than Ohio based on a number of proffered facts including that: (1) at the time of the action, the company's "filings with the California Secretary of State still reflected a Los Angeles address for its principal office;" (2) "the Defendant had not filed any documents with the Ohio Secretary of State"; and (3) the company Chairman's "LinkedIn profile

8

stated his location as the Los Angeles area and his personal assistant still works in Los Angeles." 2021 U.S. Dist. LEXIS 204308, at *5-6, 12-13. Nevertheless, the Court concluded that Ohio was the company's principal place of business because its "Ohio office is home to a plurality of its officers with strategic, decision-making, and financial authority, and is the only single place home to more than one of them." *Id*. at *13. The fact "that Defendant failed to update these records earlier is not dispositive, or indeed even all that probative" because "the nerve center test is an objective inquiry, centering on the corporation's 'place of actual direction, control, and coordination,' not on where the corporation might represent its principal office to be in public statements." *Id.* at *5 (citing *Hertz*, 559 U.S. at 97) ("[W]e reject suggestions such as . . . that the mere filing of a form . . . listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'").

In a case even more on par with the present one, the D.C. Circuit applied the *Hertz* standard to conclude that a company's principal place of business was Maryland rather than Texas despite the fact that Houston is where the company "[t]old State authorities, customers, vendors and its landlord it could be found, it was where in-person, strategic meetings were conducted, it was where tax filings were made, where its corporate records are kept, where its primary counsel, accountants and bank account are located, and the place specified as its headquarters in its corporate charter." *CostCommand LLC,* 820 F.3d at 24-25 (D.C. 2016). The Court noted that "[e]xcept for the alleged "in-person, strategic meetings," the factors composing this list have little to do with "where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Id*. at 25 (quoting *Hertz*, 559 U.S. at 80). Instead, the Court premised its decision that the company's principal place of business was Maryland because that is where the Company's founder, who had

9

final decision-making authority, worked out of an office and "oversaw and controlled [corporate activities] from Maryland." *Id*.

These are not the only cases that support Defendants' decision to seek removal. *See also Cent. W. Va. Energy, Co. v. Mt. State Carbon, LLC*, 636 F.3d 101, (principal place of business was Michigan rather than West Virginia because "its officers direct the company's high-level decisions from Dearborn, Michigan, while its day-to-day operations and public interface occur in West Virginia."); *Adams v. Abeo N. Am., Inc.*, No., 3:21-CV-72, 2022 U.S. Dist. LEXIS 53872, at *13 (M.D. Ga. Mar. 25, 2022) (nerve center was in France where both of "ABEO's officers resided" where "[n]one of ABEO's officers or its sole director has ever lived in or directed business activities from Georgia" and observing that "ABEO's reliance on day-to-day activities and the location of ABEO's tax filings, corporate records, accountant, bank account, and self-identified headquarters, to establish Hartwell, [Georgia] as ABEO's nerve center is misplaced and equally unpersuasive.").

        **C.**     **Plaintiff Has Failed to Meet His Burden to Establish the Fees Requested Are Reasonable**

Were the Court to disagree with the above analysis, Joseph still bears the burden of establishing that his requested fees are reasonable and adequately supported by time records. *See Vaquero Permian Processing, LLC*, 2022 U.S. Dist. LEXIS 127348, at *2 (W.D. Tex. May 26, 2022) (citing *Watkins*, 7 F.3d at 457). As part of its lodestar analysis, the Court may exclude excessive, duplicative, unnecessary or inadequately documented time. *Id*. Then, after calculating the lodestar amount, the Court may either accept or adjust the lodestar figure based on the circumstances of the case, taking into account the *Johnson* factors. *Id.* (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995)). The *Johnson* factors allow the Court to consider, *inter alia*, the time and labor required, the novelty and difficulty of the legal issues, and

the skill required to perform the legal service properly. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989).

The amount of time Joseph's attorneys spent on issues related to the motion to remand is excessive and not supported by adequate billing records, thus any award of attorneys' fees should be reduced. As an initial matter, the billing records presented by Joseph include "block-billed" time entries, which prevent Defendants or the Court from adequately assessing the amount of time Josephs' attorneys spent on each task to determine whether that time was excessive or duplicative. *See* Doc. 35-4 (entries for June 27, July 5, July 11, July 12, July 13, July 23, August 10, and August 15). This alone warrants a reduction. *Montgomery-Bey v. S. Methodist Univ.*, No. 3:20-cv-3521-E-BN, 2021 U.S. Dist. LEXIS 191951, at *9 (N.D. Tex. Sep. 8, 2021) ("Percentage reductions are appropriate when attorneys impermissibly engage in block billing or fail to exercise billing judgment . . . or when a court reduces excessive time spent on particular legal services"); *Shepherd v. Dall. Cty.*, No. 3:05-CV-1442-D, 2009 U.S. Dist. LEXIS 30644, at *5 (N.D. Tex. Apr. 10, 2009) (affirming magistrate's reduction of specific block-billed entries); *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-CV-0752-D, 2011 U.S. Dist. LEXIS 13672, at *18 (N.D. Tex. Feb. 11, 2011) (applying 10% reduction for block-billing).

Further, the Court has discretion under the lodestar method and the *Johnson* factors to further reduce any fees award, because the complexity of these issues, that resulted in a total of 15 pages of briefing, does not warrant an award of $33,710.00. As described above, whether removal was proper turned entirely on whether or not Texas was the "principal place of business" of Genesis Coin under the *Hertz* standard. Defendants never disputed the facts proffered by Joseph. *See* Doc. 1, Doc. 29, Doc. 32 at 4-5. Rather, Defendants argued that those facts were not relevant

under *Hertz* and have taken that position from the onset of this dispute. Doc. 35 at 2-3. Thus, at its core this was a legal dispute over whether the facts Joseph relied on to assert Genesis Coin activity in Texas trumped the fact that no persons associated with Genesis Coin resided or worked in Texas at the time of removal. Joseph's argument ultimately carried the day, but there was no need for complicated legal or factual research. Accordingly, if the Court were to award fees, an award of $33,710 would be grossly excessive.

### III. **CONCLUSION**

For the all the foregoing reasons, the Court should deny Plaintiff's Motion.

Dated: January 11, 2023.

                          Respectfully submitted,

                          **JACKSON WALKER LLP**

By:     /s/ *Scott W. Weatherford*
          Scott W. Weatherford
          sweatherford@jw.com
          State Bar No. 24079554
          100 Congress Ave., Suite 1100
          Austin, Texas 78701
          (512) 236-2073 (Direct Dial)
          (512) 391-2189 (Direct Facsimile)

                          &

**HOLLAND & HART LLP**

Jeremy B. Merkelson, *pro hac vice admission*
jbmerkelson@hollandhart.com
(202) 654-6919 (Direct Dial)
Michael J. O'Leary, *pro hac vice admission*
mjoleary@hollandhart.com
(202) 654-6922 (Direct Dial)
901 K Street NW, Suite 850
Washington, DC 20001
(202) 280-1041 (Direct Facsimile)

Brianne C. McClafferty, *pro hac vice admission*
bcmcclafferty@hollandhart.com
(406) 896-4642
401 N. 31st Street, Suite 1500
Billings, Montana 59101

*Counsel for Defendants/ Counterclaimants*

13

**CERTIFICATE OF SERVICE**

On January 11, 2022, I hereby certify that I electronically submitted the foregoing document with the Clerk of Court using the CM/ECF system.  I hereby certify that I have also served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

Marcus L. Fifer (marcus@fifer.law)
Marcus L Fifer Law Firm, PLLC
P.O. Box 6501
Austin, TX 78762

Nilay U. Vora (nvora@voralaw.com)
Jeffrey A. Atteberry (jatteberry@voralaw.com)
William M. Odom (will@voralaw.com)
THE VORA LAW FIRM, P.C.
201 Santa Monica Blvd., Ste. 300
Santa Monica, CA 90401

*Attorneys for Plaintiff/Counterclaim Defendant*

/s/ *Scott W. Weatherford*
Scott W. Weatherford

20644153_v5